David S. Bloch (SBN: 184530)
blochd@gtlaw.com
GREENBERG TRAURIG, LLP
Four Embarcadero Center, Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1300
Facsimile: (415) 415-707-2010

Robert A. Hill (AZ SBN: 033415)
(*Admitted Pro Hac Vice)*
hillro@gtlaw.com
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 445-8412
Facsimile: (602) 445-8100

Attorneys for Plaintiff
RINGCENTRAL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

RINGCENTRAL, INC., a Delaware corporation

Plaintiff,

v.

NEXTIVA, INC., UNITEDWEB, INC., and DOES 3-19

Defendants.

**Case No. 5:19-cv-02626-NMC**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND FOR A MORE DEFINITE STATEMENT**

Hon. Nathanael M. Cousins

Date: Feb. 12, 2020
Time: 1:00 p.m.
Courtroom 5, San Jose

# Table of Contents

I. INTRODUCTION ....................1
II. LEGAL STANDARD ....................1
III. ARGUMENT ....................2
A. Each of RingCentral's four claims are adequately pled ....................2
1. Count I: Interference with prospective economic advantage ....................2
2. Count II: Trade libel ....................4
(a) Each review was false ....................5
(b) False "opinions" are not protected by the First Amendment ....................6
(c) RingCentral properly pled its losses ....................7
3. Count III: Trademark infringement and cybersquatting ....................8
(a) Identifying the culpable parties ....................8
(b) The Lanham Act ....................9
4. Count IV: Unfair competition ....................9
(a) Count IV incorporates Counts I-III by reference ....................9
(b) RingCentral did not (and does not) allege passing off ....................11
5. The relationship between Nextiva and UnitedWeb ....................11
IV. CONCLUSION ....................12

## TABLE OF AUTHORITIES

**Page**

### CASES

*Am. Philatelic Soc. v. Claibourne*
3 Cal. 2d 689 (1935) .......... 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 1

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .......... 2

*Bently Reserve LP v. Papaliolios*
218 Cal.App.4th 418 (2013) .......... 6

*Bly-Magee v. California*
236 F.3d 1014 (9th Cir. 2001) .......... 2

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
20 Cal.4th 163 (1999) .......... 10, 11

*ComputerXpress, Inc. v. Jackson*
93 Cal.App.4th 993 (2001) .......... 6

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*
479 F.3d 1099 (9th Cir. 2007) .......... 3

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*
12 F.Supp.2d 1068 (C.D. Cal. 1998) .......... 4

*Foman v. Davis*
371 U.S. 178 (1962) .......... 13

*Gen. Motors Corp. v. Superior Court*
48 Cal.App.4th 580 (1996) .......... 9

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*
12 F.Supp.2d 1035 (C.D. Cal. 1998) .......... 7, 8

*Janda v. Madera Cmty. Hosp.*
16 F.Supp.2d 1181 (E.D. Cal. 1998) .......... 3

*Kanarek v. Bugliosi*
108 Cal.App.3d 327 (1980) .......... 7

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal.4th 1134 (2003) .......... 2, 3

*Krinsky v. Doe 6*
159 Cal.App.4th 1154 (2008) .......... 5

*Kwikset Corp. v. Superior Court*
51 Cal.4th 310 (2011) .......... 10

*Leonardini v. Shell Oil Co.*
216 Cal.App.3d 547 (1989) .......... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F.3d 1025 (9th Cir. 2008) .......... 9

*Maravilla v. Rosas Bros. Constr., Inc.*
401 F.Supp.3d 886 (N.D. Cal. 2019) .......... 10

*Milkovich v. Lorain Journal Co.*
497 U.S. 1 (1990) .......... 6

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*
946 F.Supp.2d 957 (N.D. Cal. 2013) .......... 7

*Plascencia v. Lending 1st Mortg.*
583 F.Supp.2d 1090 (N.D. Cal. 2008) .......... 10

*Rose v. Bank of Am., N.A.*
57 Cal.4th 390 (2013) .......... 10

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) .......... 9

*Toranto v. Jaffurs*
297 F.Supp.3d 1073 (S.D. Cal. 2018) .......... 3

*United States v. Corinthian Colleges*
655 F.3d 984 (9th Cir. 2011) .......... 2

*United States v. United Healthcare Ins. Co.*
848 F.3d 1161 (9th Cir. 2016) .......... 2

*Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*
19-cv-486 JM (MSB), 20019 WL 3429178 (S.D. Cal. July 30, 2019) .......... 3

*Walsh v. Kindred Healthcare*
798 F.Supp.2d 1073 (N.D. Cal. 2011) .......... 11

*Wong v. Jing*
189 Cal.App.4th 1354 (2010) .......... 6, 7

*ZL Technologies Inc. v. Does 1–7*
13 Cal.App.5th 603 (2017) .......... 7

## STATUTES

15 U.S.C. § 1114 .......... 10

15 U.S.C. § 1115 .......... 10

15 U.S.C. § 1125(a) .......... 10

Cal. Bus. & Prof. Code § 17200 .......... 11, 12

Fed. R. Civ. P. 12(b)(6) .......... 9

Fed. R. Civ. P. 12(e) .......... 11

Fed. R. Civ. P. 9(g) .......... 8, 9

U.S. Const., am. 1 .......... 6

## TREATISES

Restatement (2d) Torts § 623A, ill. 4 .......... 4

Restatement (2d) Torts § 626 (1977) .......... 4

## I. INTRODUCTION

RingCentral and Nextiva offer competing cloud-based communications services. ECF 32 ("FAC") ¶¶ 14-15. In this competitive market, well-educated customers make purchasing decisions in part by considering online reviews, and negative reviews can impact client acquisition costs, drive away potential customers, and lead to lost profits. *Id.* ¶ 33. Starting in 2018, dozens of fictitious companies posted reviews that denigrate RingCentral and sing Nextiva's praises. *Id.* ¶¶ 18-19. If that "coincidence" was not enough, Nextiva's IT director registered one of those fake businesses in his own name and publicly touted his expertise in "seeding" social media rankings using artificial companies. *Id.* ¶ 22. After *Doe* discovery revealed Nextiva's role, RingCentral sued Nextiva and UnitedWeb—which shares Nextiva's management and principal shareholders, and characterizes Nextiva as one of its "brands"—as the brains behind this scheme. *Id.* ¶ 16.

The defendants now move to dismiss each of RingCentral's four causes of action. They argue that RingCentral's claim for intentional interference with prospective economic advantage claim fails to identify a specific economic relationship or independently wrongful conduct; that RingCentral's claim for trade libel does not allege that the fake reviews are fake and that statements made by the fake reviewers are protected by the First Amendment; that the defendants are not clearly named as the likely culprits in RingCentral's trademark infringement and cybersquatting claim; and that RingCentral's unfair competition claim fails to identify unlawful or unfair conduct.

In fact, RingCentral's First Amended Complaint pleads all four causes of action with sufficient specificity. The defendants' objections on the merits should be addressed in discovery, not at the pleading stage. And if the Court believes that additional facts are needed, it should grant RingCentral leave to amend.

## II. LEGAL STANDARD

In addressing a motion to dismiss, the Court must determine merely whether the factual allegations in the First Amended Complaint, taken as true and together with all reasonable inferences, state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). RingCentral's First Amended Complaint need only contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007). And should the Court conclude that any claims need correction, it should grant leave to amend. "Leave to amend ... should be granted unless the pleading 'could not possibly be cured' by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *see* Fed. R. Civ. P. 15. Prior amendments are not a basis to deny leave when the "defendants' motions to dismiss were the first pleading to attack the sufficiency of [plaintiff's] allegations." *Id.* "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (internal quotations and alterations omitted).

## III. ARGUMENT

### A. Each of RingCentral′s four claims are adequately pled

#### 1. Count I: Interference with prospective economic advantage

In Count I, RingCentral alleges that the defendants—directly or through proxies—executed a scheme to harm RingCentral's future business prospects by artificially lowering RingCentral's customer-satisfaction ratings on various websites, and at the same time artificially boosting Nextiva's ratings. The defendants say that RingCentral did not identify the disruption of a specific economic relationship, an independent wrong, or economic harm. The defendants are mistaken.

To state a claim for interference with a prospective economic advantage, RingCentral must identify "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003). The First Amended Complaint fairly identifies facts supporting each of these elements.

RingCentral's First Amended Complaint explains that its ongoing and prospective relationships with customers have been disrupted by the defendants' conduct. It specifically identifies the services RingCentral offers to the general public (FAC ¶ 14) and notes that Nextiva offers the same competing services (*id.* ¶ 15). The First Amended Complaint then identifies the

harm the defendants' conduct has had on existing or prospective customers, who may "believe that RingCentral's services are inadequate, thus deterring them from engaging (or even considering) RingCentral as a provider." *Id.* ¶ 33. The fake reviews have "unnecessarily driven up customer acquisition costs" and may cause existing customers to "reconsider their existing business relationship with RingCentral in favor of Nextiva." *Id.*

The cases cited by the defendants for the proposition that RingCentral's claim is insufficiently pled are readily distinguishable. They involve either general allegations with no suggestion of harm, *Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*, 19-cv-486 JM (MSB), 20019 WL 3429178 (S.D. Cal. July 30, 2019), or even contradictory allegations that a defendant interfered with *its own* business relationships. *Toranto v. Jaffurs*, 297 F.Supp.3d 1073, 1099 (S.D. Cal. 2018) ("given the allegations that the [Defendants] were agents of each other, Plaintiff's allegations suggest Defendants interfered with a relationship with itself"). The law does not require RingCentral to identify a particular customer or contract in order to state a claim for relief. *Janda v. Madera Cmty. Hosp.*, 16 F.Supp.2d 1181, 1189 (E.D. Cal. 1998) ("The substance of Plaintiff's allegations is that Defendant's termination of his employment impaired his economic relationships with his existing patients. This pleading, even if improvable, survives a motion to dismiss.")

We do have a two-year renewable contract with this outfit. 3 months into our second renewal they decided to double our prices for the exact same Services they were receiving for. We decided to cancel the service because of that reason and we were told we were locked in for another 21 months. This is not an honest company. I agreed to a two-year contract for services and pricing what's a double it three months into it. It's unacceptable and I have absolutely no recourse. Stay away from this company. We will pay out the contract because we're are honest business people and we did agree to their damn terms. We went to Nextiva. Look into them. They've done a very good job for us.

RingCentral also must plead that the defendants committed an "independently wrongful act." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). In California, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159. As the First Amended Complaint explains, the defendants created fake companies that then posted reviews designed to diminish the reputation of RingCentral's products and simultaneously inflate their own—often at the same time. FAC ¶¶ 18–23. Consider this fake review identified at FAC ¶ 22(j) from "Electronics Int.":

Declaration of David S. Bloch ¶ 5, Ex. D; *see* Request for Judicial Notice ("RJN"), Ex. D. It is difficult to see how a statement that RingCentral "is not an honest company" could possibly be true or a non-defamatory opinion ***considering that the company in question has never been a RingCentral customer and indeed does not even exist***. Falsely claiming that RingCentral "decided to double our prices for the exact same Services" will of course cause prospective customers to reconsider whether to select RingCentral for their VoIP needs, especially when coupled with the (false) claim that "we were told we were locked in for another 21 months." If purportedly "honest business people" on a specialty forum dedicated to reviewing VoIP services proclaim "Stay away from this company," it is no more than common sense to conclude that these words—fictitious statements from an invented but real-seeming business—were calculated to and did indeed disrupt RingCentral's economic relationships with prospective customers.

The defendants are not privileged by "free competition" to impersonate RingCentral or to defame it, and RingCentral's other claims (Counts II-IV), grounded in statute and common law, satisfy the requirement that RingCentral allege independent wrongdoing. RingCentral has properly pled its interference with prospective economic advantage claim; if the Court identifies any deficiency in the First Amended Complaint, the proper remedy is leave to amend, not striking RingCentral's pleading.

**2. Count II: Trade libel**

In Count II, RingCentral alleges that the defendants have libeled its goods and services. Trade libel is a published falsehood that disparages "the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person." Restatement (2d) Torts § 626 (1977); *see Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F.Supp.2d 1068, 1082 (C.D. Cal. 1998) ("California ... has adopted the Restatement formulation of trade libel law."). Under the Restatement, false statements calculated by the defendants to redirect customers away from RingCentral and to Nextiva are actionable. *See* Restatement (2d) Torts § 623A, ill. 4 (an intentional misrepresentation by party regarding the market suitability of another's products is actionable). It is enough that "the publisher should recognize [the statements are] likely to result in pecuniary loss to the other through the

conduct of a third person in respect to the other's interests in the property." *Leonardini v. Shell Oil Co.*, 216 Cal.App.3d 547, 572 (1989).

**(a) Each review was false**

The defendants contend that RingCentral failed to specifically identify the defendants' false statements. Not so. RingCentral pled two specific categories of falsehoods arising from the defendants' fake review scheme. First, "neither the defendants nor the fake companies they created have ever been customers of RingCentral." FAC ¶ 37. Second, the content of the reviews was false and defamatory. The posts "provided low rating of RingCentral's services by (1) falsely accusing RingCentral of providing poor services ... or engaging in dishonest business practices." *Id.* ¶ 21. By pleading these two categories in detail, RingCentral has properly pled the falsity of the defendants' statements.

Indeed, each review posted by or for the defendants on behalf of a non-existent company was by definition a false statement. RingCentral identified almost twenty such false companies created by the defendants or their agents. *Id.* ¶¶ 22 (b)–(r). Each review posted by these companies was a statement, whether explicit or implicit, that the fake company in question had in fact utilized RingCentral's services. This is not a case where RingCentral's customers have exploited the relative anonymity of the internet to "engage freely in informal debate and criticism," *Krinsky v. Doe 6*, 159 Cal.App.4th 1154, 1163 (2008), but rather an intentional attack by a competitor making a false claim of an economic relationship with RingCentral.

With regard to the content of the reviews, and despite the defendants' assertions to the contrary, RingCentral has alleged defamation with sufficient specificity. RingCentral explains that the fake reviews accused RingCentral of "providing poor services" and "engaging in dishonest business practices." FAC ¶ 21. The fake reviewers left reviews with "low ratings of RingCentral's services"—implying or affirmatively saying that they had used RingCentral's services when in fact they had not. *Id.* RingCentral is a leading cloud-based communications company that provides world-class service and has won numerous awards for its high-quality software and services. *Id.* ¶ 14. To state, as the defendants did, that RingCentral is dishonest and provides poor service is false, defamatory, and actionable.

In response, the defendants cite to *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1014 (2001). But in *ComputerXpress*, the defendant posted statements on online message boards generally alleging that the owners of ComputerXpress were inflating the value of their stock—statements of opinion that were "hyperbolic" and "too vague to be taken as fact by a reasonable reader." *Id*. By contrast, in this case real-seeming companies posted real-seeming complaints about RingCentral's services and real-seeming praise for RingCentral's rival—none of which was based on any real experience with RingCentral's goods or services.

**(b) False "opinions" are not protected by the First Amendment**

The defendants also argue that the fake reviews are protected by the First Amendment. But posting falsehoods online in the form of a review does not convert the false statements to First Amendment-protected opinions. It has been long settled that merely couching a false statement of fact as an opinion does not immunize the speaker from defamation liability. The Supreme Court in *Milkovich* so held, acknowledging that, "the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). Here, the defendants did more than simply post an honest but unflattering review—they or their agents asserted falsely that they had in fact used RingCentral's services and coupled that provably false statement with another—that those services were purportedly poor. Those were assertions of fact, and actionable as false and defamatory.

In *Wong v. Jing*, an online review of a dentist was found to be potentially defamatory when it *implied* that the dentist had failed to inform a patient that fillings contained mercury, misdiagnosed that patient, and failed to warn the patient about the dangers of general anesthesia. 189 Cal.App.4th 1354, 1370 (2010). The California Court of Appeal found the defendant in *Wong* was potentially liable for defamation because even though "the review did not *expressly* state that Wong failed to warn or advise ... a defendant is liable for what is insinuated as well as for what is stated explicitly." *Id.; see also Bently Reserve LP v. Papaliolios*, 218 Cal.App.4th 418, 435 (2013) (holding that online review actionable when it contained "statements that could reasonably be understood as conveying facts"). Furthermore, in *Wong*, the court found that "[e]ven if defendants' reading of the review were reasonable, statements can be libelous despite the possibility of an innocent, nondefamatory

interpretation." *Id.*

Similarly, in *ZL Technologies Inc. v. Does 1–7* the plaintiff sued anonymous employees who posted on Glassdoor.com to allege poor management practices, "nearly 50% annual[]" employee turnover, and public humiliation by the CEO. 13 Cal.App.5th 603, 627 (2017). The court found that these reviews were not be protected and that the plaintiff had made out a claim for defamation against the anonymous defendants. *Id.*

Here, the defendants did far more than either of the culpable parties in *Wong* or *ZL Technologies*. Accepting the FAC's allegations as true, the defendants invented at least twenty fake companies to post defamatory reviews about RingCentral's products, products that they could not have used. The defendants took great care to hide the fact that they created, ran, and used these invented companies to manipulate online reviews of RingCentral and Nextiva's products. FAC ¶ 22. Ultimately, the defendants used these companies to post fake reviews that contained both explicit and implicit falsehoods: that the invented companies exist, that the reviews are based on personal experience, and that RingCentral's services are "poor." The FAC properly alleges these falsehoods. Nothing more is required.

**(c) RingCentral properly pled its losses**

Lastly, while a claim for trade libel requires proof of special damages, the precise measure of those damages need not be alleged in the First Amended Complaint. *Kanarek v. Bugliosi*, 108 Cal.App.3d 327, 337 (1980) ("Plaintiff's pleading of a reduction in the number of new clients and a loss of clients is a sufficient pleading of special damages"). The defendants suggest that Federal Rule of Civil Procedure 9(g) requires more, but in fact California's pleading standard is consistent with Rule 9: while "[a] bare allegation of the amount of pecuniary loss alleged is insufficient, [] plaintiff is not required to allege a specific dollar amount." *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998) (citation omitted).

To plead pecuniary damage in a trade libel claim, RingCentral must either "identify particular customers and transactions of which it was deprived as a result of the libel," *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F.Supp.2d 957, 981 (N.D. Cal. 2013) (Illston, J.), ***or*** "allege[] facts showing an established business, the amount of sales for a substantial period

preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication." *Isuzu Motors Ltd.* at 1047. Here, RingCentral identified a broad misinformation campaign, the consequence of which is that "RingCentral has lost revenue it would ordinarily have but for the defendants' public and disparaging comments." FAC ¶ 43. This loss of revenue was caused by the loss of "customers and prospective customers" who discontinue their use of RingCentral's services. *Id.* RingCentral has also been required to expend additional funds because the defendants' actions have increased customer acquisition costs. *Id.* ¶ 33. RingCentral is a growing and successful company in spite of the defendants' actions. This is more than sufficient under both California law and Rule 9(g). And if the Court wants additional detail, it should grant RingCentral leave to amend.

### 3. Count III: Trademark infringement and cybersquatting

#### (a) Identifying the culpable parties

As the FAC alleges, RingCentral was the victim of an online scheme involving numerous falsely registered website domains of fake companies presenting untrue reviews about it. This scheme was obviously aimed at tarnishing RingCentral's goodwill and reputation so as to drive potential customers from RingCentral and to its competitor, Nextiva. Though tracing a culprit through cyberspace is hard, RingCentral was able to follow a thread from a fake review on VoipReviews.com to directly connect the scheme to Nextiva itself. *Id.* ¶ 22(a). At the same time, some entity registered a typosquatted version of RingCentral's domain name and sought to impersonate the company. FAC ¶ 25. It reasonably concluded that the same competitor that would orchestrate such a brazen and sophisticated false review scheme would likely be behind this *other* false domain name registration and subsequent misuse.

The defendants fault RingCentral for not identifying with sufficient particularity "Doe 19," the registrant of www.ringcetrnal.com. And it is true that RingCentral does not know whether the registrant was Nextiva or UnitedWeb. It is at least possible that it was neither of them, and instead this was a mere coincidence.[1] When the culpable party is unclear, a Doe designation is appropriate.

---

[1] Of course, if the evidence uncovered during discovery does not bear out this or any other of

*Gen. Motors Corp. v. Superior Court*, 48 Cal.App.4th 580, 589 (1996), as modified on denial of reh'g (Sept. 5, 1996) (discussing the relation back doctrine when a plaintiff files against a fictitious party because "the plaintiff is genuinely ignorant of [Doe's] name ore identity"). But "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The defendants' bare denial that they did not register www.ringcetrnal.com and use it to further their scheme to divert business from RingCentral does not even rise to the level of a "plausible" alternative to RingCentral's allegations. The defendants were caught seeding fake reviews against RingCentral using fake companies; that they would falsely register one more domain is not a stretch but a perfectly reasonable inference, and RingCentral has a right to seek information in discovery to establish the culpable party.

**(b) The Lanham Act**

In addition, RingCentral accurately and fully stated a claim pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1115(d). FAC ¶¶ 45-55. The defendants suggest that RingCentral should have identified 15 U.S.C. § 1125(d) rather than § 1125(a) as its basis for relief, but the gravamen of RingCentral's complaint is plain: RingCentral suffered severe harm as a result of the unlawful appropriation of its trademark and subsequent unfair competition. The FAC is not "so vague or ambiguous that the party cannot reasonable prepare a response." Fed. R. Civ. P. 12(e). There is no need for a more definite statement, and of course if the Court wants additional information (or wants RingCentral to more clearly state its cause of action under subsection 1125(d)), it should grant leave to amend. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (a court granting a motion to dismiss should permit leave to amend unless it would be clearly futile).

**4. Count IV: Unfair competition**

**(a) Count IV incorporates Counts I-III by reference**

"California's Unfair Competition Law prohibits any 'unlawful, unfair or fraudulent business act or practice.' ... The UCL incorporates other laws and treats violations of those laws as unlawful

---

RingCentral's claims, RingCentral will dismiss the impugned claim.

business practices independently actionable under state law." *Plascencia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1097–98 (N.D. Cal. 2008) (Wilken, J.). "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." *Id.* Indeed, "a business practice may be 'unfair or fraudulent in violation of the UCL even if the practice does not violate any law.'" *Id.* (citation omitted). The penalties under California Business & Professions Code § 17200 are "cumulative to each other and to the remedies or penalties available under all other laws of this state." *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F.Supp.3d 886, 901 (N.D. Cal. 2019) (Tigar, J.). By incorporating its prior three claims, RingCentral properly pleads that the defendants engaged in unfair competition.

*First*, Claims II and III of the First Amended Complaint state causes of action for trade libel and trademark infringement. These claims satisfy the "unlawful" prong of Section 17200. *Plascencia*, 583 F.Supp.2d at 1097–98.

*Second*, even if RingCentral had not stated violations of law, the facts in the First Amended Complaint adequately state a claim under the "unfair" prong of Section 17200. A practice falls under Section 17200 if it implicates antitrust laws or if it "otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999). It is hard to imagine acts more damaging to competition than impersonating a competitor's customers and attacking their reputation, FAC ¶¶ 18-24, or impersonating a competitor itself and attempting to have it delisted from a trade publication, *id*. ¶ 25. RingCentral has sufficiently pled that the defendants' intentional misinformation campaign has cost RingCentral customers and forced it to expend additional funds in maintaining its market position. This injury is intentional; the defendants planned this outcome through their actions, which were designed to disparage RingCentral's position in the market through anti-competitive lies.

*Third*, injunctive relief and restitution are available under California's unfair competition law. *Rose v. Bank of Am., N.A.*, 57 Cal.4th 390, 399 (2013) (emphasis added). Because RingCentral seeks (in part) an injunction to stop the unfair and unlawful publication of fake reviews, it properly states a request for relief. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 337 (2011) ("we hold ineligibility for restitution is not a basis for denying standing under section 17204 and disapprove

those cases that have concluded otherwise"). RingCentral also seeks restitution and disgorgement from the defendants for business RingCentral lost or Nextiva gained from the false reviews and other alleged misconduct. *See* FAC at 13 ¶ 4. Disgorgement of the nature requested by RingCentral is not merely a restatement of general damages, but rather is precisely the restitution envisioned under unfair competition law. *Kwikset Corp.* at 336.

**(b) RingCentral did not (and does not) allege passing off**

RingCentral properly pled unfair competition under the Lanham Act and Business & Professions Code § 17200. It does not claim passing off. Rather, it claims deceptive conduct, which "has remained at the heart of unfair competition." *Cel-Tech Commc'ns, Inc.* 20 Cal.4th at 192. The actions identified in the First Amended Complaint were designed to deceive RingCentral's current and potential customers and redirect them to Nextiva. This falls directly under the ambit of unfair competition law. *Am. Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 696 (1935) ("the conduct of respondent ... will inevitably result in severe pecuniary injury to the appellants, and the gaining by respondent of an advantage arising out of, in the final analysis, duplicity and dishonesty").

Count IV thus is properly pled with sufficient particulars to allow the defendants to formulate a response. If the Court thinks more detail is needed, it should grant leave to amend.

**5. The relationship between Nextiva and UnitedWeb**

The defendants also complain that the First Amended Complaint does not adequately distinguish between Nextiva and UnitedWeb, and that publicly available information contradicts the FAC's claim that there is a relationship between the two companies.

Once again, the defendants' arguments to strike the pleading is without merit. To begin with, this argument is not well-taken at the pleading stage. It is sufficient for RingCentral to allege that Nextiva and UnitedWeb are related, and that their relationship is sufficiently close that they collaborated in the tortious conduct alleged in the First Amended Complaint. *See Walsh v. Kindred Healthcare*, 798 F.Supp.2d 1073, 1082 (N.D. Cal. 2011) (White, J.) (allegations identical ownership, place of business, and use of entity as mere shell sufficient to allege liability for tortious acts undertaken by two separate corporate entities).More importantly, the defendants' bold statement that Nextiva "is not owned or controlled by UnitedWeb at all" (Motion to Dismiss at 14)

is inconsistent with what the defendants say elsewhere. Nextiva and UnitedWeb share the same place of business, 880 E. Chaparral Rd., Ste. 300, Scottsdale, AZ 85250. Bloch Declaration ¶¶ 2-3, Exs. A and B; *see* RJN. According to UnitedWeb's website, Nextiva is one of "our brands." *Id.* ¶ 4, Ex. C; *see* RJN. Public filings reveal that every executive employed by UnitedWeb holds the exact same position with Nextiva. *Id*, Exs. A, B. Likewise, every member of UnitedWeb's Board holds the same position with Nextiva. *Id*. Here is what the public record reveals:

| **Position** | **Nextiva, Inc.** | **UnitedWeb, Inc.** |
|---|---|---|
| **CEO** | Tomas Gorny | Tomas Gorny |
| **CFO** | Anne Brennan | Anne Brennan |
| **Chairman of the Board** | Tomas Gorny | N/A |
| **COO** | Marc Stoll | Marc Stoll |
| **Director #1** | Tomas Gorny | Tomas Gorny |
| **Director #2** | Tracy Conrad | Tracy Conrad |
| **Secretary** | John Murphy | John Murphy |
| **Shareholder #1** | Tomas Gorny | Tomas Gorny |
| **Shareholder #2** | Tracy Conrad | Tracy Conrad |

Each corporation's 2020 annual report was signed by Tomas Gorny on the same day (November 12, 2019). *Id.*, Exs. A, B. Whether UnitedWeb is technically the owner of Nextiva is irrelevant: stated in terms of ownership or control, the evidence shows that UnitedWeb dominates Nextiva and fully controls its actions.

## IV. CONCLUSION

RingCentral's First Amended Complaint is the result of months of investigations culminating in the very rare discovery of the culpable party behind a sophisticated online scheme to defame RingCentral. Caught red-handed, Nextiva and UnitedWeb now seek to dismiss the allegations against them. The defendants' Rule 12 motion to dismiss should be denied because the First Amended Complaint fully satisfies federal pleading rules and applicable law.

And to the extent the Court believes more detail is needed, such information can easily be

added by amendment. "Dismissal without leave to amend is improper unless it is clear ... that the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). Nor is there any showing or suggestion of "undue delay, bad faith or dilatory motive." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nextiva's and UnitedWeb's motion should be denied—and if it is sustained, the Court should grant leave to amend.

Dated: January 21, 2020

GREENBERG TRAURIG, LLP

By: /s/ ______________________________
David S. Bloch

David S. Bloch
Robert A. Hill

*Attorneys for Plaintiff RingCentral, Inc.*