1  David S. Bloch (SBN: 184530)
   blochd@gtlaw.com
2  GREENBERG TAURIG, LLP
   Four Embarcadero Center, Suite 3000
3  San Francisco, CA 94111
   Telephone: (415) 655-1300
4  Facsimile: (415) 707-2010

5  Robert A. Hill (AZ SBN: 033415)
   (*Admitted Pro Hac Vice*)
6  hillro@gtlaw.com
   GREENBERG TAURIG, LLP
7  2375 East Camelback Road, Suite 700
   Phoenix, AZ 85016
8  Telephone: (602) 445-8412
   Facsimile: (602) 445-8100

9
   Attorneys for Plaintiff
10 RINGCENTRAL, INC.

11

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN JOSE DIVISION**

15

| RINGCENTRAL, INC., a Delaware corporation | Case No. **5:19-cv-02626-NMC** |
|---|---|
| Plaintiff, | **RINGCENTRAL'S OPPOSITION TO NEXTIVA, INC. AND UNITEDWEB, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| NEXTIVA, INC., UNITEDWEB, INC., and DOES 3-19 | Date: April 29, 2020<br>Time: 1:00 p.m.<br>Location: Courtroom 5<br>Hon. Nathanael M. Cousins |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARD ...................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

    A.   RingCentral's Trade Libel and Defamation Claims are Properly Pled ...................................... 2

        1.   RingCentral identified statements by Nextiva and UnitedWeb sufficient to sustain its defamation and trade libel claims ............................................................. 2

        2.   Nextiva and UnitedWeb's trade libel and defamation have caused RingCentral specific, identifiable harm .................................................................... 6

        3.   Nextiva and UnitedWeb's scheme included republication of defamatory reviews during the statutory period and in any event was concealed from RingCentral .................................................................................................................. 7

    B.   The Second Amended Complaint Properly Alleges Interference With Prospective Economic Advantage .................................................................................................................. 9

        1.   The Second Amended Complaint properly alleges that defendants' intentional acts interfered with specific potential RingCentral customers .................................... 10

        2.   The Second Amended Complaint properly alleges that defendants engaged in independent tortious acts ............................................................................................ 10

        3.   The Second Amended Complaint properly alleges that the defendants proximately caused RingCentral actual damages ........................................................ 11

    C.   The Second Amended Complaint Alleges Each Element of Unfair Competition .................. 11

    D.   The Second Amended Complaint Properly Alleges Alter Ego Liability ............................... 12

        1.   All information not in the defendants' exclusive possession shows that Nextiva and UnitedWeb share a unity of interest ....................................................... 12

        2.   To allow UnitedWeb to be dismissed on a corporate formality would result in manifest injustice .................................................................................................... 14

        3.   If UnitedWeb is dismissed, it must be without prejudice pending future discovery ..................................................................................................................... 14

CONCLUSION ............................................................................................................................. 155

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 1

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 1

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F.Supp.3d 1141 (S.D. Cal. 2014) ...................................................................... 10

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
    12 F.Supp.2d 1068 (C.D. Cal. 1998) ....................................................................... 5

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ................................................................................................. 5

*J.D. Pflaumer, Inc. v. U.S. Dep't of Justice*,
    450 F.Supp. 1125 (E.D. Pa. 1978) ......................................................................... 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 12

*McGuire v. Dendreon Corp.*,
    688 F.Supp.2d 1239 (W.D. Wash. 2009) .............................................................. 14

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ................................................................................................ 4, 5

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ................................................................................... 7

*Oja v. U.S. Army Corps of Engineers*,
    440 F.3d 1122 (9th Cir. 2006) ................................................................................. 8

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ................................................................................... 5

*Plascencia v. Lending 1st Mortg.*,
    583 F.Supp.2d 1090 (N.D. Cal. 2008) (Wilken, J.) ............................................... 11

*Roberts v. McAfee, Inc.*,
    660 F.3d 1156 (9th Cir. 2011) ................................................................................. 7

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) ................................................................................. 4

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) ............................................................................................2

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) .........................................................................................7, 8

**California Cases**

*Bernson v. Browning-Ferris Indus.*,
  7 Cal.4th 926 (1994) .........................................................................................................8, 9

*Communist Party v. 522 Valencia, Inc.*,
  35 Cal.App.4th 980 (1995) ..............................................................................................12

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal.4th 376 (1995) .......................................................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ...............................................................................................10, 11

*MacLeod v. Tribune Pub. Co.*
  52 Cal. 2d 536 (1959) .........................................................................................................6

*Mesler v. Bragg Mgmt. Co.*,
  39 Cal.3d 290 (1985) ........................................................................................................14

*N. Am. Chem. Co. v. Superior Court*,
  59 Cal.App.4th 764 (1997) ..............................................................................................10

*Norgart v. Upjohn Co.*,
  21 Cal.4th 383 (1999) .........................................................................................................9

*Palm Springs Tennis Club v. Rangel*,
  73 Cal.App.4th 1 (1999) ....................................................................................................6

*Selleck v. Globe Int'l, Inc.*,
  166 Cal. App. 3d 1123 (1985) .......................................................................................5, 6

*Slaughter v. Friedman*,
  32 Cal.3d 149 (1982) ..........................................................................................................4

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal.App.4th 523 (2000) ..............................................................................................13

**California Statutes**

Cal. Civ. Code
  § 45a ....................................................................................................................................5
  § 48a ....................................................................................................................................7

**Other Authorities**

First Amendment ..................................................................................................................................4

Fed.R.Civ.P. 15 ....................................................................................................................................2

Rule 12 .................................................................................................................................................5

# INTRODUCTION

Nextiva and UnitedWeb jointly argue (ECF 57) that RingCentral has not cured the deficiencies identified by the Court in its Order (ECF 53) granting the defendants' first motion to dismiss. Instead of facing the substance of the Second Amended Complaint (ECF 56), Nextiva and UnitedWeb offer dubious arguments that the detailed financial harm alleged by RingCentral does not sufficiently allege "special damages," that the defendants did not make the defamatory statements in dispute, and that the statements are not defamatory *per se*.

The Second Amended Complaint contains allegations that belie each of the defendants' arguments for dismissal. RingCentral provided detailed and specific allegations of customers it lost, including particularized amounts lost by RingCentral as a direct result of the defendants' actions. These lost customers have even been categorized, where possible, into those who were redirected specifically to Nextiva and those who "merely" refused to do business with RingCentral based on false and defamatory internet reviews. Moreover, RingCentral has provided for the Court's consideration screenshots of statements posted by the defendants that are defamatory *per se* because they level untrue allegations against RingCentral that can be understood with no additional factual inferences. The Second Amended Complaint has properly named UnitedWeb as an alter ego of Nextiva, and RingCentral has properly alleged, based on publicly available documents, that the two corporations share a unity of interest sufficient to set aside corporate formalities when (as here) justice requires.

The defendants' motion to dismiss is replete with arguments that rely upon either conveniently ignoring multiple paragraphs in RingCentral's Second Amended Complaint or denying their importance. Their renewed motion should be denied.

# LEGAL STANDARD

In addressing the defendants' motion to dismiss, the Court must determine merely whether the factual allegations in the Second Amended Complaint, taken as true and together with all reasonable inferences, state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). RingCentral's Second Amended Complaint need only contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007). And should the Court conclude that any claims need correction, "[l]eave to amend ... should be granted unless the pleading 'could not possibly be cured' by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (internal citation omitted); *see* Fed.R.Civ.P. 15.

## ARGUMENT

### A. RingCentral's Trade Libel and Defamation Claims are Properly Pled

#### 1. RingCentral identified statements by Nextiva and UnitedWeb sufficient to sustain its defamation and trade libel claims

Nextiva and UnitedWeb provide a lengthy and disjointed argument regarding purported deficiencies in RingCentral's defamation and trade libel allegations. While these arguments are scattered through the motion to dismiss, in essence the defendants argue that they did not publish the defamatory statements in question and that the statements could not support defamation or trade libel claims regardless. *E.g.*, ECF 57 at 4, 13-15. In response, and as set forth in more detail below, RingCentral's Second Amended Complaint alleges that: (a) the defendants made the defamatory statements at issue; (b) those statements concern RingCentral; (c) they are not protected "opinion;" and (d) the statements are libelous *per se*.

**a. Significant evidence supports the inference that the defendants made the defamatory statements underlying RingCentral's defamation and trade libel claims.** RingCentral's Second Amended Complaint contains specific allegations that support the plausible inference that the defendants were engaged in the false review scheme. The existence of the scheme assuredly meets the evidentiary test – RingCentral has pled the existence of dozens of fictitious businesses that posted fake reviews, some engaged in puffery of Nextiva and others slamming RingCentral. The scheme is not limited to Gage or Gonzalez; it goes beyond that. This fleet of non-existent businesses was coupled with legitimate-looking business websites and their reviews were promoted by Nextiva itself in its official blog. ECF 56 ¶ 25. Many of the websites associated with fake reviews shared the same IP address and hence presumably originated from the same host and network location. By incorporating evidence uncovered in *Doe* discovery, RingCentral plausibly alleges the elaborate scheme that underlies each of its claims.

The defendants include in a footnote an alternative theory that two individuals independently posted the defamatory reviews of RingCentral. ECF 57 at 14 n. 1. This allegation does not stand up to serious scrutiny, and the defendants' arguments ignore the numerous questions of fact that remain for the jury to consider. The fact that Nextiva/UnitedWeb identified a person named Susan Gonzalez does not indicate that she was the author of the defamatory review in question. The Susan Gonzalez review was posted from an email associated with the domain "electronicsint.com" a website that does not exist and would seem to have little relationship with "Worldwide Finances," the organization Nextiva's declaration associates with Gonzalez. *Compare* ECF 56 ¶ 26(k). Was Susan Gonzalez the author of the review, or did Nextiva pluck her name from a database of prospective customers and put defamatory words in her mouth?

In addition, even if the review of Joe Gage of Williamson County, Texas, was genuinely his, Gage's declaration does not take credit for, or explain, why an identical review was posted under the name "Jynifer" or why he is identified in a separate review as being located in Ottawa, Canada. ECF 56 ¶¶ 26(l)(i). If by Gage's own admission he only posted a single negative review, did Nextiva propagate that false review across the internet, using different names and different locations to suggest more widespread dissatisfaction with RingCentral's services? These questions must be answered in light of the fact that the reviews were posted on websites where RingCentral competes with Nextiva, with the intention to drive customers who frequent such sites away from RingCentral and to Nextiva.

**b. The fake positive reviews are relevant to RingCentral's defamation and trade libel claims.** The defendants argue that the fake positive reviews they posted propping up Nextiva cannot support a defamation or trade libel claim as a matter of law. ECF 57 at 4-6. Even if the defendants' assertion that false positive statements cannot, on their own, support a claim for defamation, the fake positive reviews for Nextiva remain relevant. For purposes of RingCentral's trade libel and defamation claims (ECF 56 claims 2 and 3), these false statements demonstrate Nextiva and UnitedWeb's intent to capitalize on the false negative reviews upon which the claims

are based.[1]  *See Slaughter v. Friedman*, 32 Cal.3d 149, 157 (1982) (qualified privilege defense inapplicable where defamatory publications "were made as part of a plan ... to discredit and impugn the reputation and integrity of Plaintiff.").  The false positive claims also are relevant to the court's consideration of damages, including punitive damages arising from the defendants' intentional bad acts.

**c. The defamatory statements contain numerous allegations of facts and are actionable, despite the defendants' description of them as "opinion."**  There is no separate First Amendment constitutional protection for opinions.  *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) ("the threshold question in defamation suits is not whether a statement might be labeled opinion, but rather whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact.") (internal quotation omitted).  While statements that do not assert objective facts are protected by the First Amendment, a party cannot immunize itself by couching false statements of fact as "opinion."  As the Supreme Court has held, "the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'"  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).  Here, where the defamatory statements contained in the Second Amended Complaint contain defamatory facts, the defendants' "opinion" defense falls flat.

The defamatory statements quoted directly by RingCentral are replete with factual assertions.  For instance, the "Gonzalez" review states that RingCentral took several specific actions, *e.g.*, "they won't cancel those lines" and "I was billed for a number I did not have or use."  ECF 56 ¶ 35(k).  The "Gonzalez" review also makes assertions of fact regarding the quality of RingCentral's services, including "I have experienced terrible voice quality," "the line gets disconnected all the time," or "they have non-existent customer service."  *Id.*  Similarly, the "Gage" reviews contain allegations that RingCentral "decided to double our prices" and that it

---

[1] The positive reviews are also integral to RingCentral's interference with prospective economic advantage and unfair competition claims (ECF 56 claims 1 and 4) because they are the means by which the defendants redirected RingCentral's customers to Nextiva.

"decide[d] that you are doubling my fees." ECF 56 ¶ 35 (l)(i). Finally, the assertion in the "Gage" review that "this is not an honest company" falls squarely into language that the Supreme Court in *Milkovich* held contained a defamatory fact. *See Milkovich* at 19 (the phrase "in my opinion Jones is a liar" is a factual allegation of dishonesty). Cases cited by the defendants for the proposition that their defamatory statements are merely opinion are inapposite, either because the statements therein were unprovable as true or false, *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F.Supp.2d 1068, 1081 (C.D. Cal. 1998), or by being "interpretations of the facts available to both the writer and the reader," *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995).

The defamatory statements are not entitled to any constitutional protection asserted by the defendants, and are sufficiently pled to defeat the defendants' Rule 12 motion.

**d. The statements are defamatory on their faces.** Nextiva and UnitedWeb assert that in order for a statement to be libelous *per se*, its readers must know it to be false on its face. ECF 57 at 22-23. Defamation is a tort specifically to protect the plaintiff's reputation from false assertions that the community accepts as true. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (intentional falsehood not entitled to constitutional protection because lies do not advance "society's interest in uninhibited, robust, and wide-open debate"). In fact, it is a defense to defamation when a statement contains obviously false "rhetorical hyperbole," specifically because such obvious falsehoods are integral to "public debate." *Milkovich*, 497 U.S. at 20. In short, the defendants' proposed test has no basis in law.

In California, a libelous statement is defamatory *per se* if it is "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1130 (1985), quoting Cal. Civ. Code § 45a. "It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning." *Id*. Here, the statements posted by the defendants falsely state that individuals from far-flung locations used RingCentral's services and describe specific negative experiences that they did not have. No special knowledge or inference is necessary to understand that a company is dishonest or has poor

customer service, and the statements are facially defamatory.[2]

### 2. Nextiva and UnitedWeb's trade libel and defamation have caused RingCentral specific, identifiable harm

It is unclear what further information the defendants would ask to satisfy a pleading of special damages. RingCentral has alleged and identified specific businesses that dropped RingCentral for Nextiva based on the false review scheme, and other businesses that left RingCentral based on the false review scheme and went, if not to Nextiva, at least to some other RingCentral competitor. RingCentral has provided particulars of numerous businesses that were sufficiently interested in its services to receive an estimate. ECF 56 ¶ 35. Each of these businesses eventually turned away from RingCentral and to Nextiva on the basis of negative online reviews, including from websites identified as hosting the false reviews posted by Nextiva. With respect to those identified customers, RingCentral has alleged (based on its internal won-lost business records) that specific companies were redirected from RingCentral to Nextiva for telecommunication services based in part or in full on reading reviews that are now known to be false. *Id*.

There were at least another 115 individual accounts that did not hire RingCentral on the basis of online reviews. As to those additional accounts, RingCentral knows they abandoned the RingCentral platform based in part or in full on reading reviews that are now known to be false; but it does not (yet) have enough information to say with confidence that they went to Nextiva.

---

[2] Should the defendants prevail on this argument, RingCentral also has pled special damages sufficient to state a claim under the more exacting defamation *per quod* standard, which requires a showing of special damages. *Palm Springs Tennis Club v. Rangel*, 73 Cal.App.4th 1, 5 (1999). For example, in *MacLeod v. Tribune Pub. Co.*, a dentist claiming defamation had caused "$5000.00 or more" of lost business satisfied the special damage pleading because it "described with sufficient particularity to enable defendant to prepare its defense, and under the circumstances stated the extent of the loss may be alleged on information and belief." 52 Cal. 2d 536, 548 (1959).

*Id*. ¶¶ 37-38.

These potential customers were not hypothetical "missed opportunities" but were deep in discussions to engage RingCentral for VoIP services. Each potential customer described in the Second Amended Complaint had received an estimate for services and each, by their own words, chose not to go into business with RingCentral on the basis of online reviews during the period the defendants are alleged to have been engaged in their scheme. ECF 56 ¶¶ 35(i)-(x), 38-39. These specific allegations identify customers who would have consummated a contract with RingCentral but for the defendants' actions and are more than sufficient to quantify the amount of future economic benefit that was interrupted by the defendants' scheme.

The two categories of lost customers caused RingCentral at least $116,402 and $2,565,506 per annum respectively. ECF 56 ¶¶ 36, 39. "Special damages are defined as 'all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other.'" *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998), quoting Cal. Civ. Code § 48a. RingCentral thus has alleged special damages for its trade libel and defamation claims. Nothing more is required.

### 3. Nextiva and UnitedWeb's scheme included republication of defamatory reviews during the statutory period and in any event was concealed from RingCentral

The defendants also claim that the Second Amended Complaint is, on its face, barred by the applicable statutes of limitations. ECF 57 at 11-13. The defendants misread both: (a) the single publication rule; and (b) the discovery rule.

**a. Single publication rule.** California follows the "single publication rule," which was designed to "spar[e] the courts of litigation of stale claims when an offending book or magazine is sold years later." *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012). When applied to an internet publication, this rule causes the statute of limitation to continue to run when a defamatory publication is hosted on a single website without alteration, even though numerous individuals might view that website within the statutory period. *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011). But the rule does not apply when the defamatory publication is "substantively

7
OPP. TO DEFENDANTS' MOT. TO DISMISS 2D AM. COMPLAINT - No. 5:19-cv-02626-NMC

altered or added to, or the website is directed to a new audience." *Yeager*, 693 F.3d at 1082. Where, as here, the defendants are alleged to have posted numerous modified or unique defamatory publications within the statute of limitations, *see* ECF 56 ¶ 26, the single publication rule does not apply.

"[S]ubstantive changes or updates to previously hosted content that are not "merely technical" may sufficiently modify the content such that it is properly considered a new publication for purposes of the statute of limitations period." *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1132 (9th Cir. 2006). Changing Joe Gage's name to Jynifer or his location from Texas to Canada when republishing the statement (as shown at ECF 56 ¶ 26(l)(i)) are not mere technical changes. Instead, the doctored reviews and republications create the impression of a wider circle of disappointed customers. Moreover, the second example in the Second Amended Complaint (purportedly published by "Joe G. of Ottawa, Canada") is entirely different from the review Joe Gage was willing to take credit for in his declaration. That multiple different reviews use either the name or the text of the "real" Joe Gage is, if anything, proof that the defendants are exploiting Mr. Gage's name, disseminating statements far beyond his intended audience and (it seems) putting defamatory words in his mouth.

Even if the May 23, 2018 Gage review had been copied verbatim, the republication of a review on a separate website is analogous to, and indeed more egregious than, republishing a defamatory statement in a new book edition. *See Yeager*, 693 F.3d at 1082 ("a statement made in a hardcover book is republished when it is repeated in a later paperback version of the book"). And by inventing fake individuals to repost it, the defendants have improperly amplified and republished the (alleged) single review. Because the defendants' republications are alleged to have been within the statutory period, the single publication rule does not bar this claim.

**b. The discovery rule.** Where a party anonymously publishes a defamatory statement with the intent to conceal its identity, the statute of limitations may be tolled by equitable principles. "[A] defendant may be equitably estopped from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant's actual identity." *Bernson v. Browning-Ferris Indus.*, 7 Cal.4th 926, 936 (1994). To avail itself of

this principle, RingCentral must have been reasonably diligent in its attempts to uncover the identity of the culpable party. *Id.* Here, of course, the Court is well aware of the many steps RingCentral took and the multiple rounds of subpoenas in order to find out the true actors behind the false reviews scheme.

Even if it is true that Joe Gage posted a negative review of RingCentral on May 12, 2018, and that knowledge is imputed to RingCentral, that does not preclude the application of the discovery rule. RingCentral does not allege defamation on the basis that individuals posted legitimate negative reviews of its services. It alleges that UnitedWeb and Nextiva, posing as RingCentral customers, submitted reviews that were false in their source and content. ECF 56 ¶¶ 26, 68-71. RingCentral's claim does not rest on the single review held up by the defendants, but rather a campaign by the defendants on Nextiva's behalf, a scheme that involved numerous false reviews posted on or after May 14, 2018. ECF 56 ¶¶ 25-26. It cannot be the law that RingCentral is expected to immediately know whether every review of its services is legitimate or not. As alleged in the Second Amended Complaint, RingCentral discovered in mid-2018 that there was a scheme to tear down its reputation and prop up Nextiva. *Id*. at ¶ 21. A single negative review is not sufficient for the Court to conclude, as a matter of law, that RingCentral had discovered, or had reason to discover, the cause of action. *See Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999). Put another way, a single negative review of RingCentral was insufficient to provide notice of "circumstances to put a reasonable person on inquiry." *Id.* It was only when a pattern emerged that RingCentral could have reasonably suspected there was a scheme to defame it—and that pattern could not have been apparent on the first day Joe Gage posted a review. Accordingly, the discovery rule applies to toll the statute of limitations at least beyond the two days necessary to defeat the defendants' argument.

**B.    The Second Amended Complaint Properly Alleges Interference With Prospective Economic Advantage**

To state a claim for inte0rference with prospective economic advantage, RingCentral must identify "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the

relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003).  Nextiva and UnitedWeb allege that RingCentral: (1) failed to plead specific economic relationships that have been disrupted by their scheme; (2) cannot prove the defendants' engaged in an independently wrongful act; and (3) has suffered no damages through the defendants' wrongful acts.  The defendants' arguments are baseless.

### 1. The Second Amended Complaint properly alleges that defendants' intentional acts interfered with specific potential RingCentral customers

As stated at length above (§ A.2), RingCentral properly alleged the existence of economic relationships with customers with a high probability of future economic benefit and the actual, intentional disruption of those relationships by the defendants' defamatory scheme.  Furthermore, these disruptions were not merely speculative, but were, by RingCentral's potential customers' own words, a result of negative reviews, many of which caused customers to specifically choose Nextiva over RingCentral.  ECF 56 ¶¶ 35-36, 39.

Proximate cause in an interference-with-prospective-economic-advantage claim is established when a plaintiff pleads facts that establish it is "reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.Supp.3d 1141, 1158 (S.D. Cal. 2014), quoting *N. Am. Chem. Co. v. Superior Court*, 59 Cal.App.4th 764, 786 (1997).  The facts alleged in the Second Amended Complaint easily meet this test.

### 2. The Second Amended Complaint properly alleges that defendants engaged in independent tortious acts

As shown above, RingCentral has properly pled claims for defamation and trade libel against Nextiva and UnitedWeb.  *See* ECF 56 ¶¶ 56-80.  This is sufficient to establish an independent action "wrongful by reason of a statute or other regulation, or a recognized rule of common law," as is required to state a claim for interference with prospective economic

advantage. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 385 (1995).

### 3. The Second Amended Complaint properly alleges that the defendants proximately caused RingCentral actual damages

To allege damages in an interference with prospective economic advantage claim, it is not necessary to allege that an existing contract has been disrupted, nor to identify specific pecuniary damages. *Korea Supply Co.*, 29 Cal.4th at 1165. As discussed in § A.2, above, the Second Amended Complaint identifies specific businesses that left RingCentral for Nextiva based on the false review scheme, and other businesses that left RingCentral for an unknown competitor. These businesses were sufficiently interested in RingCentral's services to receive an estimate; each eventually turned away from RingCentral; and each cited negative online reviews on the affected websites during the period when the scheme was in effect as the reason. ECF 56 ¶ 35.

Losing the customers identified in the Second Amended Complaint cost RingCentral around $2.7 million per annum. ECF 56 ¶¶ 36, 39. These potential customers were not hypothetical "missed opportunities" but concrete prospects in discussions with RingCentral. Each potential customer described in the Second Amended Complaint had received an estimate for services and each, by their own words, chose not to go into business with RingCentral on the basis of (false) online reviews. ECF 56 ¶¶ 35(i)-(x), 38-39. These specific allegations, which identify customers who would have consummated a contract with RingCentral but for the defendants' actions, are more than enough to quantify the amount of future economic benefit that was interrupted by the defendants' scheme. *Korea Supply Co.*, 29 Cal.4th at 1165 ("[Plaintiff] sufficiently pleads actual disruption by alleging that it did not receive its expected commission since [its customer] was not awarded the contract").

### C. The Second Amended Complaint Alleges Each Element of Unfair Competition

Nextiva and UnitedWeb presume that the claims in the Second Amended Complaint will not survive their motion to dismiss, and on that basis argue that RingCentral's unfair competition claim must be dismissed as well. But they tacitly admit (as they must) that if a single one of RingCentral's other claims survives this motion, so too must its unfair competition claim. ECF 57 at 25-26; *compare Plascencia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1097-98 (N.D. Cal.

2008) (Wilken, J.) ("Violation of almost any federal, state, or local law may serve as the basis for a UCL claim").

The Court, when dismissing the First Amended Complaint with leave to amend, stated that because RingCentral's prior claims failed, the unfair competition claim did as well. ECF 53 at 8. The converse is also true: where at least one of RingCentral's independent claims should survive the defendants' motion to dismiss, the unfair competition claim likewise should survive because it incorporates by reference those other three claims. ECF 56 ¶ 81. The defendants pay lip service to other prongs of California's unfair competition law not implicated by the Second Amended Complaint, but these are of no consequence when RingCentral's other claims are sufficient to state a claim for unfair competition. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability").

### D. The Second Amended Complaint Properly Alleges Alter Ego Liability

RingCentral has adequately pled that UnitedWeb is liable under an alter-ego theory for Nextiva's actions. "[T]he two requirements for applying the alter ego doctrine are that (1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice." *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 993 (1995). "The issue is not so much whether the corporate entity should be disregarded for all purposes or whether its very purpose was to defraud the innocent party, as it is whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form." *Id.* Here, the allegations and documents before the Court show plainly that there is no daylight between Nextiva and UnitedWeb. To allow UnitedWeb to avoid responsibility for its alter ego's action would result in fundamental injustice.

#### 1. All information not in the defendants' exclusive possession shows that Nextiva and UnitedWeb share a unity of interest

When determining whether two companies share a unity of interest, the Court looks to "commingling of funds and other assets of the two entities, the holding out by one entity that it is

liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538-39 (2000).  Here, every publicly available fact before the Court supports a finding that Nextiva and UnitedWeb share a unity of interest.

In their joint motion to dismiss, Nextiva and UnitedWeb fault RingCentral for not providing evidence in the Second Amended Complaint that they commingle funds, fail to maintain corporate records, adequately capitalize the corporation, or are using one corporation as a mere shell.  ECF 57 at 28.  *First*, each of these factors speaks to Nextiva and UnitedWeb's "unity of ownership and interest," the fact of which was alleged in the Second Amended Complaint.  ECF 56 ¶ 17.  *Second*, each of the facts underlying these factors is in the exclusive control of the defendants; RingCentral has no access to the financial records of either Nextiva or UnitedWeb, nor is it privy to the private management decisions of both corporations.  The evidence RingCentral has in its possession strongly supports the inference that Nextiva and UnitedWeb are ignoring corporate formalities; their Arizona Corporation Commission filing are nearly identical and were filed on the same dates.  ECF 56 ¶ 16.  The lack of other supporting facts is a matter that can be cured through discovery—discovery the defendants would avoid if UnitedWeb is dismissed.

To support their denial of this element, Nextiva and UnitedWeb simply ignore allegations regarding their unity of ownership and interest.  In their brief argument, they say that RingCentral did not "state the address of Nextiva and UnitedWeb" and did not sufficiently allege that the two corporations shared executives.  ECF 57 at 28-29.  The Second Amended Complaint contains allegations that the defendants' publicly filed corporate documents prove that "they share the same principal executives, same place of business, same principal shareholders, and even filed their annual reports on identical dates."  ECF 56 ¶ 16.  The defendants forget that they themselves asked for their corporate filings to be placed into evidence in their prior motion to dismiss.  *See* ECF 45 at 6, 11; ECF 47-1 at 4, 7.  Those corporate filings show indisputably that RingCentral's factual allegations are true.

13
OPP. TO DEFENDANTS' MOT. TO DISMISS 2D AM. COMPLAINT - No. 5:19-cv-02626-NMC

The Second Amended Complaint adequately alleges that Nextiva and UnitedWeb share a unity of interest.

### 2. To allow UnitedWeb to be dismissed on a corporate formality would result in manifest injustice

The essence of the alter ego doctrine is that justice be done. *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985). RingCentral claims that UnitedWeb worked in concert with a Nextiva employee to institute the fake review scheme. ECF 56 ¶ 21. While only Nextiva's IT director has been personally identified, RingCentral alleges that UnitedWeb (Nextiva's owner and alter ego) is the scheme's true beneficiary. The most obvious example is Nextiva itself, which is described by UnitedWeb (as alleged in the Second Amended Complaint) as "one of its brands." ECF 56 ¶ 15. Another of UnitedWeb's brands or affiliates, Endurance International Group Holdings, Inc., through Endurance's subsidiary Bluehost, was used to facilitate the scheme by serving as a domain name registrar for the websites of at least some of those companies involved in the fake reviews. ECF 56 ¶¶ 26(a)-(b). UnitedWeb is a defendant because it took part in the scheme to defame RingCentral through its subsidiaries and alter egos. The scheme was for its benefit, and to dismiss it would work a fundamental injustice on RingCentral.

### 3. If UnitedWeb is dismissed, it must be without prejudice pending future discovery

If the Court nevertheless dismisses UnitedWeb, it must be without prejudice pending discovery. *See McGuire v. Dendreon Corp.*, 688 F.Supp.2d 1239, 1245 (W.D. Wash. 2009) (dismissal of one defendant in multi-party lawsuit was without prejudice because Complaint was curable by amendment); *J.D. Pflaumer, Inc. v. U.S. Dep't of Justice*, 450 F.Supp. 1125, 1136 (E.D. Pa. 1978) (individual ATF agent dismissed in civil rights lawsuit without prejudice so that plaintiffs could establish his personal involvement in discovery). The defendants argue that there is not enough information to show UnitedWeb is the alter ego of Nextiva. Given the indisputable unity of interest between Nextiva and UnitedWeb, it is extremely probable that future discovery will uncover additional factual support for alter ego liability. Thus, UnitedWeb cannot be dismissed with prejudice (and should not be dismissed at all).

14
OPP. TO DEFENDANTS' MOT. TO DISMISS 2D AM. COMPLAINT - No. 5:19-cv-02626-NMC

## CONCLUSION

The Second Amended Complaint carefully responds to each of the problems identified in the Court's prior dismissal order (ECF 53). It identifies specific libelous and defamatory statements; pleads special damages in particular amounts arising from the loss of identified customers and potential customers; is based on a scheme for which the statute of limitations has not yet run; and properly identifies UnitedWeb as Nextiva's alter ego. The Court should deny the defendants' motion to dismiss RingCentral's Second Amended Complaint.

Dated: April 17, 2020                         GREENBERG TRAURIG, LLP


                                              By: /s/
                                                  David S. Bloch

                                              David S. Bloch
                                              Robert A. Hill

                                              Attorneys for Plaintiff RINGCENTRAL, INC.