UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINGCENTRAL, INC.,<br>        Plaintiff,<br>    v.<br>NEXTIVA, INC., et al.,<br>        Defendants. | Case No. 19-cv-02626-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 57 |

In this business defamation lawsuit, defendants Nextiva, Inc. and UnitedWeb, Inc. move to dismiss plaintiff RingCentral Inc.'s second amended complaint. *See* Dkt. No. 57. Defendants argue that RingCentral still fails to allege facts supporting its claims. In its amended complaint, RingCentral now alleges sufficient facts to support its claims, but still fails to establish an alter ego relationship between the two Defendants. Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

**I.  Background**

    **A.  Allegations in the Second Amended Complaint**

The facts alleged in the complaint are considered true for purposes of the motion to dismiss. RingCentral provides cloud-based unified communication services. *See* Dkt. No. 32 ¶ 14. Nextiva is a competitor to RingCentral. *Id.* ¶ 15. UnitedWeb owns, operates, and shares its principle place of business as well as multiple executives with Nextiva. *Id.* ¶¶

12, 15–16.

In mid-2018, Nextiva and UnitedWeb fabricated fictitious personas and created fake online businesses using those personas. *Id.* ¶¶ 21–23. At least one of those websites and personas were created by Nextiva's IT director, Eric Sornoso, and hosted by Bluehost, a UnitedWeb-affiliated company. *See id.* ¶ 26. During this time, Sornoso also operated a business aimed at artificially boosting social-media rankings. *Id.* ¶ 26(a). Defendants then used those fake personas and businesses to post fake, positive reviews of their own services and fake, negative reviews of RingCentral's services on various review platforms. *Id.* ¶¶ 24–25, 26. As a result of these reviews, RingCentral lost at least one existing customer and several prospective customers. *Id.* ¶ 34–35.

### B. Procedural History

RingCentral filed its second amended complaint on March 20, 2020, alleging claims for (1) interference with prospective economic advantage; (2) trade libel, Cal. Civ. Code § 44(a), 45, 46(3); (3) defamation, Cal. Civ. Code §§ 44 *et seq.*; and (4) unfair competition, Cal. Bus. & Prof. Code §§ 17200 *et seq. See id.* As the defamation claim was new, RingCentral concurrently moved for leave to add that claim. *See* Dkt. No. 55. The Court granted that motion on April 23, 2020. *See* Dkt. No. 61.

Defendants again move to dismiss RingCentral's claims. *See* Dkt. No. 57. Because the Court already addressed RingCentral's defamation claim in its prior order (*see* Dkt. No. 61), the Court declines to reconsider Defendants' arguments regarding that claim here. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 9, 51.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9thCir. 2011).

### III. Discussion

#### A. Trade Libel

Trade libel is the intentional disparagement of property that results in pecuniary damage. *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). A claim for trade libel requires pleading: (1) a publication, (2) which induces other not to deal with plaintiff, and (3) special damages. *Id.* Trade libel plaintiffs must also identify specific details about the statements, including who made the statements. *See NPK Indus. v. Hunter*, No. 15-cv-5461667, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015) (citing *First Adv. Background Servs. Corp. v. Private Eyes, Inc.*, 569 F.Supp.2d 929, 937 (N.D.Cal.2008))

Defendants first point out that some of the reviews quoted in RingCentral's complaint do not concern RingCentral's services. *See, e.g.*, SAC ¶ 25. Those reviews, however, are not the subject of RingCentral's defamation claim.

Next, Defendants argue that RingCentral fails to plead sufficient facts to support a reasonable inference that Defendants made those reviews. The Court disagrees, however. As the Court previously stated in its order granting RingCentral leave to amend, RingCentral alleged that Nextiva's IT director was responsible for registering a domain name, "digitalbrandentertainment.com," for a fake business and posted a fake review with that persona. *See id.* ¶ 26(a). RingCentral also alleged that this domain was hosted by a UnitedWeb-affiliated company. *Id.* ¶¶ 26(a), (b).

In their reply, Defendants point out that these allegations do not directly tie to the

3

1    negative reviews, which were not affiliated with the "digitalbrandentertainment.com"
2    domain. But RingCentral's complaint alleges more than just one domain name.
3    RingCentral identifies a host of fake domains posing as "verified users." *See* SAC ¶ 25.
4    These allegations allow the reasonable inference that Defendants or its agents indeed
5    created fake domains and posted reviews affiliated with those domains, some of which
6    were used to praise Nextiva's services, while others were used to denigrate RingCentral's
7    services. *Twombly* and *Iqbal* require only plausibility, not certainty. These allegations
8    suffice to raise a plausible inference that Defendants were responsible for the reviews.

9        Defendants also contend that the alleged reviews were merely statements of opinion
10   and are not actionable under the First Amendment. "While 'pure' opinions are protected
11   by the First Amendment, a statement that 'may . . . imply a false assertion of fact' is
12   actionable." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (quoting
13   *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). To determine whether a
14   statement contains an assertion of objective fact, the Ninth Circuit uses a three-part test:
15   "(1) whether the general tenor of the entire work negates the impression that the defendant
16   was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic
17   language that negates that impression, and (3) whether the statement in question is
18   susceptible of being proved true or false." *Id.* (citing *Unelko Corp. v. Rooney*, 912 F.2d
19   1049, 1053 (9th Cir. 1990)); *see also Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284,
20   1293 (9th Cir. 2014).

21       The negative reviews in question all purport to be from actual clients of
22   RingCentral. *See* SAC ¶ 26. They also state that RingCentral doubled prices, refused to
23   cancel lines, and billed for numbers they did not use. *Id.* These statements are susceptible
24   of being proved true or false. And the "general tenor" of the statements do not negate the
25   impression that the speakers were asserting objective facts. Indeed, each statement was
26   posted on an online review website, suggesting that the speakers intended to convey
27   objective truths about their experience with RingCentral's services. The reviews were also
28   not so hyperbolic as to negate the impression that the reviewers were asserting objective

4

facts. *Partington*, 56 F.3d at 1153.

Finally, Defendants argue that RingCentral failed to allege that it suffered special damages as a result of their alleged actions. Under California law, a trade libel plaintiff "must also prove that the statement played 'a material and substantial part in inducing others not to deal with [the plaintiff].'" *Piping Rock Partners, Inc. v. David Lerner Assocs.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (quoting *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964)). Here, RingCentral identifies one customer, Woven, who cancelled its account with RingCentral due to "[o]nline reviews especially from trustpilot.com." SAC ¶ 34. RingCentral also identifies several prospective customers who declined to purchase RingCentral's products because of "online reviews." *Id.* ¶ 35.[1]

Defendants argue that RingCentral failed to adequately allege that these damages were proximately caused by its alleged conduct. Indeed, RingCentral does not allege that Defendants were responsible for any negative review on trustpilot.com. But Woven and the prospective RingCentral customers spoke of online reviews generally in addition to specific reviews. While RingCentral must eventually prove that those customers actually read the reviews supposedly posted by Defendants and that those reviews played a substantial and material role in their decision to pursue other services, it is enough at this stage that RingCentral identified the damages with specificity and that RingCentral's allegations are plausible.

Accordingly, the Court DENIES Defendants' motion to dismiss RingCentral's trade libel claim.

### B. Interference with Prospective Economic Advantage

Interference with prospective economic advantage requires "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3)

---

[1] As Defendants note, some of these customers closed their inquiry in early 2018, before Defendants' allegedly began their false review scheme. *See* Dkt. No. 57 at 18. The Court will not consider those customers in its analysis.

5

intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996)).

Defendants raise three arguments in support of their motion to dismiss RingCentral's interference claim. None are persuasive.

First, Defendants argue that RingCentral failed to identify the disruption of any business relationship with a specific third party containing the possibility of future economic benefits. *See* Dkt. No. 57. RingCentral, however, alleged that at least one of its then-existing clients cancelled its account due to negative online reviews. *See* SAC ¶ 34. This established commercial relationship certainly contains the probability of future economic benefit. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019). RingCentral also identified various potential client customers who cited negative online reviews as their reason for not purchasing its services. *Id.* ¶ 35. While sparse, RingCentral's allegations suggest that these prospective customers would not have "closed [their] inquir[ies]" into RingCentral's services but for Defendants' alleged misconduct. *See id.*

Defendants' second and third arguments are closely related to their trade libel arguments discussed above. *See* Dkt. No. 57. Interference with prospective economic advantage is actionable only if the underlying conduct is independently wrongful of the interference itself. *Korea Supply*, 29 Cal. 4th at 1153. As explained above, Defendants' underlying conduct consists of trade libel and defamation, which are independently tortious acts. Likewise, Defendants' argument that RingCentral failed to link its allegations of damages to Defendants' alleged misconduct fails for reasons stated above.

Accordingly, the Court DENIES Defendants' motion to dismiss RingCentral's interference with prospective economic advantage claim.

### C. Unfair Competition

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech*, 20 Cal. 4th at 180. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Here, RingCentral has stated claims for trade libel, defamation, and interference with prospective economic advantage. RingCentral's UCL claim therefore survives as well. The Court DENIES Defendants' motion to dismiss RingCentral's UCL claim.

### D. Alter Ego Liability

Defendants argue that UnitedWeb should be dismissed because RingCentral has not adequately alleged alter ego liability. Under California law, alter ego liability is appropriate when two requirements are met: "First, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation marks and citation omitted). The first requirement looks to factors such as the "[c]ommingling of funds and other assets [and] failure to segregate funds of the separate entities . . .; the treatment by an individual of the assets of the corporation as his own . . .; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . .; [and] the diversion [of assets from a corporation by or to a] stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets . . . between entities so as to concentrate the assets in one and the liabilities in another." *Id.* (quoting *Assoc. Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 837–40 (1962) (alterations in original)).

Here, in support of its assertion of alter ego liability, RingCentral alleges that

UnitedWeb and Nextiva share multiple executives, have the same place of business, principal shareholders, and file their annual reports on the same dates. SAC ¶¶ 15–16. These allegations, while striking, are not sufficient to establish an alter ego relationship. They do not suggest that UnitedWeb and Nextiva comingle funds or disregard legal formalities. *Schwarzkopf*, 626 F.3d at 1038.

Accordingly, the Court GRANTS Defendants' motion to dismiss UnitedWeb. The Court is mindful, however, of the fact that information that could conceivably establish an alter ego relationship is likely within Defendants' control. Thus, RingCentral may seek leave to amend its complaint if it discovers facts suggesting an alter ego relationship.

## IV. Conclusion

The Court GRANTS IN PART Defendants' motion to dismiss UnitedWeb. The Court otherwise DENIES IN PART Defendants' motion to dismiss RingCentral's second amended complaint. RingCentral may not add new claims or parties without further leave of the Court.

**IT IS SO ORDERED.**

Dated: April 29, 2020   _____
NATHANAEL M. COUSINS
United States Magistrate Judge