United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINGCENTRAL, INC.,<br>　　　　Plaintiff,<br>　　v.<br>NEXTIVA, INC., et al.,<br>　　　　Defendants. | Case No. 19-cv-02626-NC<br><br>**ORDER DENYING RINGCENTRAL'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART NEXTIVA'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 202, 204 |

It is a rainy day for cloud-based communications companies. Before the Court are two motions for summary judgment in this business torts case: first, plaintiff and counterclaim-defendant RingCentral, Inc.'s motion for summary judgment on Nextiva's counterclaim, and second, defendant and counterclaimant Nextiva, Inc.'s motion for summary judgment on RingCentral's complaint. *See* Dkt. Nos. 202 ("Nextiva MSJ"), 204 ("RC MSJ"). The Court finds that as to RingCentral's motion, there are triable issues of fact pertaining to all of Nextiva's counterclaims. As to Nextiva's motion, the Court finds that there is no genuine dispute as to the claims involving allegedly false positive reviews of Nextiva, but there are triable issues of fact as to all of RingCentral's remaining claims.

Accordingly, the Court DENIES RingCentral's motion for summary judgment in its entirety, and GRANTS IN PART and DENIES IN PART Nextiva's motion for summary judgment.

## I. BACKGROUND

### A. The Parties and Procedural History

Plaintiff and counterclaim-defendant RingCentral is a Delaware corporation, with a principal place of business in Belmont, California. Dkt. No. 116 ("TAC") ¶ 4. RingCentral provides cloud-based unified communications as a service. *Id.* ¶ 13. Its software-as-a-service communications platform provides a comprehensive set of business communications features for voice, virtual private branch exchange, audio and video conferencing, messaging, contact center collaboration, SMS, online meetings, contact center, and fax. *Id.*

Defendant and counterclaimant Nextiva, Inc. is an Arizona corporation, with a principal place of business in Scottsdale, Arizona. TAC ¶ 6. Nextiva also provides a cloud-based unified communications market with business phone solutions including voice, video, and messaging. TAC ¶ 14.

#### 1. Complaint by RingCentral

On May 14, 2019, RingCentral filed its initial complaint, alleging claims against unnamed defendants for tortious interference, trade libel, unfair competition, and trademark infringement. Dkt. No. 1. Nextiva first moved to dismiss the complaint for a more definite statement and failure to state a claim, and the Court granted dismissal with leave to amend. Dkt. Nos. 44, 53. Nextiva later moved to dismiss the second amended complaint, and the Court dismissed defendant UnitedWeb, but otherwise denied the motion. Dkt. Nos. 57, 65. On December 31, 2020, RingCentral filed its third amended complaint for (1) tortious interference, (2) defamation, (3) trade libel, (4) unfair competition, and (5) cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d). *See generally* TAC.

#### 2. Counterclaim by Nextiva

Nextiva filed its answer on May 12, 2020, and raised five counterclaims against RingCentral: (1) unfair competition under Cal. Bus. & Prof. Code § 17200; (2) false advertising under Cal. Bus. & Prof. Code § 17500; (3) false advertising under the Lanham

1  Act, 15 U.S.C. § 1125(a); (4) trade libel; and (5) intentional interference with prospective
2  economic advantage. Dkt. No. 67 ("Counterclaim"). RingCentral moved to dismiss and
3  strike the counterclaims. Dkt. No. 72. On July 17, 2020, this Court dismissed Nextiva's
4  trade libel and intentional interference counterclaims. Dkt. No. 81. All parties have
5  consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). *See* Dkt. Nos.
6  9, 51.

### B. The Conflict Between the Parties

RingCentral and Nextiva are competitors in the cloud-based unified communications market. TAC ¶ 14. According to RingCentral, beginning in mid-2018, Nextiva initiated a widespread scheme to deliberately and maliciously defame RingCentral and wrongfully interfere with its business opportunities, with the goal of improving Nextiva's competitive standing. TAC ¶ 21. RingCentral alleges that Nextiva engaged in a broad-based internet campaign of falsehoods against RingCentral to wrongfully damage its reputation and steer potential business toward Nextiva. *Id.* Specifically, RingCentral alleges — and Nextiva admits — that Nextiva's independent contractor, Baruch Labunski, fabricated fictitious online personas of RingCentral personnel, registered domain names using fake contact information, and created fraudulent websites associated with those domains for the purpose of redirecting users away from RingCentral, and toward unrelated business websites. *Id.* ¶ 22; Dkt. No. 133 ("Answer") ¶ 29.

Furthermore, RingCentral alleges that Nextiva posted public reviews on several independent online communications and collaboration review websites using fake personas and misleading email addresses. TAC ¶ 24. RingCentral alleges that the fake *negative* reviews of RingCentral accused them of providing poor services and engaging in dishonest business practices, while the fake *positive* reviews of Nextiva harmed RingCentral because it furnished Nextiva with a perfect 5-star rating, casting RingCentral in a bad light. *See id.* ¶ 25 (emphasis added).

Similarly, Nextiva alleges that RingCentral carried out a wide-ranging and persistent scheme to disseminate false and derogatory reviews on the internet about

3

Nextiva and other competitors, and posted false reviews to inflate RingCentral's own performance. *See* Counterclaim ¶¶ 13–17. According to Nextiva, RingCentral allegedly carried out its scheme by creating and maintaining its own comparison webpage (the "/compare page") using third-party sponsored websites containing a comparison of services and prices between RingCentral and Nextiva. *Id.* ¶ 26–29. It also created a customer review page (the "/review page"), which aggregates data from other review sources and allows visitors to read reviews from RingCentral's customers. *Id.* ¶ 37. Nextiva alleges, however, that the /review page, is misleading. "While each of the sourced websites . . . contain numerous negative reviews of RingCentral when visited directly, no negative reviews appear when viewed through RingCentral's website." *Id.*

RingCentral filed a motion for summary judgment on Nextiva's counterclaims, and Nextiva filed a motion for summary judgment on RingCentral's complaint. While these were pending, Nextiva noticed the Court saying it no longer intends to pursue its counterclaim theory that arises out of RingCentral's comparative pricing page. Dkt. No. 287.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving

4

party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 572 U.S. 651 (citing *Liberty Lobby*, 477 U.S. at 255).

## III. DISCUSSION

### A. RingCentral's Motion for Summary Judgment on Nextiva's Counterclaim

Nextiva filed a counterclaim for false advertising and unfair competition under California law, as well as false advertising under the Lanham Act. *See* Counterclaim ¶¶ 63–88. RingCentral moves for summary judgment on all counterclaims. *See generally* RC MSJ; *see* Dkt. No. 210 ("Answer") at 24–25. The Court finds that there are genuine issues of material fact on all issues raised, and therefore DENIES RingCentral's motion for summary judgment.

#### 1. False Advertising and Unfair Competition Claims

Nextiva's counterclaim is based on five forms of alleged misconduct, but the parties ultimately dispute only two of them in their briefing: (1) that on its /compare page, RingCentral makes false claims about its own services and Nextiva's services, and (2) that RingCentral promotes false star ratings and manipulates its reviews on the /review page. *See generally* Counterclaim; *see also* Dkt. No. 226 ("Nextiva Opp'n") at 2, 5; *see also* Dkt. No. 245-5 ("RC Reply") at 3. RingCentral moves for summary judgment on the grounds that Nextiva cannot prove falsity, causation, or economic injury, and that Nextiva's claims are barred by the unclean hands doctrine.

Claims for false advertising and unfair competition under California law are "substantially congruent" to claims made under the Lanham Act, and require the same proof. *See Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-3756-KAW, 2016 WL 6025469, at *13 (N.D. Cal. Oct. 14, 2016); *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007). To bring a false advertising

5

claim under the Lanham Act, the plaintiff must allege: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.* If a plaintiff can provide evidence contrary to the proposition or statement asserted by the defendant in the advertisement, then the "plaintiff has [] met its burden of demonstrating literal falsity." *Id.* When evaluating whether a statement is literally false (either on its face of by necessary implication), courts analyze it "in its full context." *Id.* at 1139, 1144.

### a. /Compare Page

Nextiva originally complained of four categories of false information on RingCentral's /Compare Page. RC MSJ at 8; RC Reply at 4. At the hearing, however, the parties focused their arguments only on RingCentral's alleged statements regarding conference calling, and pricing. *See* Dkt. No. 268. Then, while the motions on summary judgment were pending, Nextiva provided notice to the Court that it no longer intends to pursue its counterclaim theory that arises out of RingCentral's comparative pricing page. Dkt. No. 287. As such, the Court omits its analysis of the /compare page, as the issue is now moot.

### b. /Review Page

Nextiva claims that RingCentral produces false star ratings on its /review page. Counterclaim ¶¶ 38–39. RingCentral's /review page reflects an overall 4.8-star rating in

6

1    the marketplace, but on the sourced websites where the reviews originate, it has "at least

2    hundreds of one- and two-star reviews; rather than the five one- and two-star reviews

3    reflected on RingCentral's Reviews Page." Nextiva Opp'n at 11–12; Dkt. No. 226-2

4    ("Zaleski Decl."), Exs. 10, 17.

5          First, RingCentral objects to Nextiva's evidence as inadmissible for lack of

6    authentication, *see* Zaleski Decl., Ex. 17, and for mischaracterizing an email regarding

7    inaccurate review ratings, *id*, Ex. 10. The evidence shows screenshots of RingCentral's

8    customer reviews on the Better Business Bureau and Trustpilot.com. *Id.*

9    "[U]nauthenticated documents cannot be considered in a motion for summary judgment."

10   *Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 1531349, at *6 (N.D. Cal. Mar. 31,

11   2020) (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)). But the

12   Court is not persuaded by RingCentral's objections for improper authentication under FRE

13   901. "In considering internet print-outs, courts have considered the 'distinctive

14   characteristics' of the website in determining whether a document is sufficiently

15   authenticated." *See Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1091 (N.D. Cal.

16   2011). Here, in addition to Zaleski's accompanying declaration, the screenshots of the

17   internet reviews contain sufficient indicia of authenticity, including images and names of

18   various customers, website design, dates and times of publication, and the web address of

19   retrieval. Therefore, the Court OVERRULES RingCentral's evidentiary objections.

20         Next, RingCentral argues that it is not responsible for any inaccuracies in the star

21   ratings because a third party, BirdEye, aggregates the ratings whereas RingCentral merely

22   republishes them. RC Reply at 9. Both parties' arguments have been considered.

23   Nextiva's evidence, however, raises genuine issues of material fact regarding a multitude

24   of these issues including but not limited to, how RingCentral went about fabricating the

25   average star rating, and whether third party BirdEye had discretion to exclude reviews.

26   Zaleski Decl., Ex. 13 at 92:15–93:9. These are questions for the jury. Consequently,

27   RingCentral's motion for summary judgment on the false advertising law, Lanham Act,

28   and unfair competition law claims is DENIED.

### c. Causation and Economic Injury

RingCentral argues that Nextiva has not proven causation or economic injury. RC Reply at 10–13. "When a party seeks damages for an allegedly false advertisement under the Lanham Act, 'actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case.'" *VBS Distribution, Inc. v. Nutrivita Lab'ys, Inc.*, 811 F. App'x 1005, 1007 (9th Cir.), *cert. denied*, 141 S. Ct. 454 (2020) (quoting *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)). Alternatively, damage is assumed under the Lanham Act for comparative advertising between competitors only when it is shown that the statements in the advertising are *deliberately* false. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41 (9th Cir. 1986).

Here, Nextiva's experts used regression analyses to show that traffic to RingCentral's web pages closely coincided with reduced Nextiva sales, and that Nextiva would have to spend significant funds to correct the misimpressions that RingCentral's pages caused in the market. *See* Dkt. No. 203-5, Ex. 13 ¶ 77, Ex. 7. Nextiva's evidence suggests that traffic to RingCentral's web pages caused Nextiva to lose market share and millions in profits. Zaleski Decl., Ex. 8 at 13–16. But RingCentral challenges the experts' opinions because their conclusions calculate injury across all of Nextiva's claims without apportionment, including those claims that are now abandoned. RC Reply at 10. Furthermore, RingCentral contends that Nextiva lacks sufficient evidence for a jury to find that customers materially altered their decisions due to RingCentral's advertising. RC Reply at 7–8.

The Court finds that there are triable issues of material fact. A jury should decide whether the documented consumer misimpressions prove that those consumers heeded the allegedly false information, used it to terminate their services with Nextiva or go to a competitor, and resulted in Nextiva losing potential profits. *See* Zaleski Decl., Ex. 7. Therefore, RingCentral's motion on causation and economic injury is DENIED.

//

//

### 2. Unclean Hands

RingCentral asserts an affirmative defense of unclean hands. To prevail on a defense for unclean hands in response to a Lanham Act claim, RingCentral must show that Nextiva's conduct (1) "was 'inequitable' or 'unconscionable,'" and (2) "that the plaintiff's conduct 'relate[d] to the very activity that is the basis of his claim.'" *First Ascent Ventures Inc. v. DLC Dermacare LLC*, 312 F. App'x 60, 61 (9th Cir. 2009). RingCentral must also "show that [Nextiva's] inequitable conduct caused injury." *GrasshopperHouse LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1101 (C.D. Cal. 2019).

Factual questions related to the defense can be resolved as a matter of law only if "the evidence presented by both sides would permit the trier of fact to come to only one conclusion." *Metal Jeans, Inc. v. Metal Sport, Inc.*, 987 F.3d 1242, 1244 (9th Cir. 2021). After considering both parties' arguments, the Court finds there are factual issues that do not support summary judgment. RingCentral's unclean hands defense is based upon the factual disputes previously discussed, and thus preclude resolution as a matter of law. Therefore, the Court DENIES summary judgment for unclean hands.

For the foregoing reasons, the Court DENIES RingCentral's motion for summary judgment in its entirety.

### B. Nextiva's Motion for Summary Judgment on RingCentral's Complaint

RingCentral filed a complaint for intentional interference with prospective economic advantage, defamation, trade libel, unfair competition, and cybersquatting. *See generally* TAC. Nextiva moves for summary judgment on all claims. *See generally* Nextiva MSJ. The Court finds that, except for claims based upon allegedly fake positive reviews of Nextiva, there are genuine disputes of material fact on all of RingCentral's claims. Therefore, the Court GRANTS IN PART and DENIES IN PART Nextiva's motion for summary judgment.

#### 1. Fake Positive Reviews of Nextiva

In its complaint, RingCentral accuses Nextiva of posting fake online reviews, and those allegations form the basis of its claims for intentional interference, trade libel,

9

defamation, and unfair competition. *See generally* TAC. There are two types of alleged fake reviews at issue: (1) fake negative reviews about RingCentral, and (2) fake positive reviews about Nextiva. Dkt. No. 229 ("RC Opp'n") at 7–9. Nextiva moves for summary judgment on RingCentral's defamation and trade libel claims arguing that they cannot, as a matter of law, reach allegedly false reviews of Nextiva. *See* Nextiva MSJ at 5.

Baruch Labunski, under the supervision of Nextiva's former Chief Marketing Officer, Yaniv Masjedi, posted over 10,000 fake positive reviews of Nextiva on downdetector.com and verified-reviews.com, Dkt. No. 229-2 ("Mullins Decl."), Exs. 2, 8, 9, 10, 19, and posted at least 166 additional fake positive reviews of Nextiva on Capterra, Fit Small Business, G2, Gartner, GetVoIP, Software Advice, and VoIPReview. *See* Dkt. No. 229-6 ("Yearwood Decl.") ¶ 18. Additionally, Nextiva published at least 85 fake *negative* reviews of RingCentral's services, *see* Yearwood Decl. ¶ 17, but according to RingCentral's own expert, approximately five of those fake negative reviews are "verified."[1] *See* Yearwood Decl., ¶ 7. It is undisputed that the allegedly fake positive reviews of Nextiva concern only Nextiva — the statements in those reviews do not concern RingCentral, nor do they reference RingCentral explicitly or by implication. *See* Nextiva MSJ at 6, n.3; *See* Dkt. No. 268.

In a prior order on motion to dismiss, this Court held that "some of the reviews quoted in RingCentral's complaint do not concern RingCentral's services . . . Those reviews, however, are not the subject of RingCentral's defamation claim." Dkt. No. 65 at 3. Although the present motion permits the Court to look beyond the pleadings, the same rationale applies.

Defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage."

---

[1] Former FBI agent Ron Yearwood, RingCentral's expert, identified fake negative reviews as "verified" only if it could be legitimately established as fake by tying it directly to the then-known domains registered by Nextiva's contractor, Baruch Labunski. *See* Yearwood Decl. ¶ 6. This category is confined to reviews that Nextiva employees, agents, or associated third parties *admit* are false *and* were posted for Nextiva. *Id.*

*Price v. Stossel*, 620 F.3d 992, 998 (9th Cir. 2010). A defamation plaintiff must also prove "that the contested statements are of and concerning, him either by name or by clear implication." *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999) (internal quotation marks and citations omitted). Similarly, trade libel is the intentional disparagement of another's property that results in pecuniary damage. *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). A claim for trade libel requires "(1) a publication, (2) which induces others not to deal with the plaintiff, and (3) special damages." *Id.*

Where words or other matters that are the subject of a defamation action are of ambiguous meaning, or are innocent on their face and defamatory only in light of the extrinsic circumstances, a plaintiff must plead and prove that as used, the words had a particular meaning, or "innuendo," that makes them defamatory. *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645–46 (1999), *as modified* (June 23, 1999). This includes the requirement that in an instance of ambiguous language — where the language is susceptible to either a defamatory or innocent interpretation — the plaintiff must also plead and prove the extrinsic circumstances which show that the third person reasonably understood it in its derogatory sense. *Id.* Whether a statement is reasonably susceptible to a defamatory interpretation is a question of law for the court. *MacLeod v. Tribune Publ'g Co.*, 52 Cal. 2d 536, 546 (1959).

The Court finds that there is not a genuine dispute of material fact for two reasons. First, the fake positive reviews of Nextiva are not "of and concerning the plaintiff." Second, RingCentral does not provide sufficient evidence showing that in light of the extrinsic circumstances, third parties reasonably understood the fake positive reviews to be a part of a "defamatory scheme" against RingCentral.

### a. "Of and Concerning the Plaintiff"

Here, the fake positive reviews at issue concern only Nextiva and neither expressly nor impliedly communicate anything about RingCentral. RingCentral did not advance an argument about the "of and concerning the plaintiff" element in its briefs. *See* RC Opp'n

11

at 13–14. Thus, because the fake positive review statements are not "of and concerning" RingCentral, Nextiva has successfully shown an absence of evidence establishing a genuine dispute of material fact regarding the fake positive reviews of Nextiva. *See Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986) (dismissing trade libel claims and explaining that trade libel "requires that the injurious false statement 'specifically refer to,' or be 'of and concerning,' the plaintiff in some way.").

### b. Ambiguous Meaning and Defamatory Scheme

In response, RingCentral argues that the fake positive reviews played a "central role in accomplishing the object of the 'defamatory scheme' — to defame RingCentral by telling [consumers] that RingCentral was *poorly regarded, particularly in comparison to Nextiva.*" RC Opp'n at 1. Thus, RingCentral argues that *all* reviews should be considered for its defamation and trade libel claims, as opposed to just the fake negative reviews of RingCentral. But the law does not recognize a "defamatory scheme." Even if the statements were "of and concerning" RingCentral, it was charged with proving that the statements in the fake positive reviews had an ambiguous meaning, and that prospective customers reasonably understood those statements to be derogatory against RingCentral under the circumstances. Although it is true that under California law, a defamatory statement can be "expressly stated or implied," *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980), here the statements were unambiguous.

For instance, RingCentral shows that three prospective customers, who ultimately chose Nextiva, made a comparison between the two companies after looking at reviews. *See* Dkt. No. 229-5 ("Mohammed Decl."), Exs. B, E, F. But there is no evidence that those prospective customers interpreted *positive* reviews about Nextiva to mean something derogatory about RingCentral. In fact, two of the reviews even acknowledge positive pricing attributes for RingCentral, and two provide other unrelated reasons to select Nextiva over RingCentral. *See id.* Just because prospective customers draw that comparison themselves, does not make fake positive reviews about Nextiva inherently derogatory. To agree with RingCentral's "defamatory scheme" argument, would be to say

12

that any statements made in the course of market competition, whether falsified or factual, would necessarily result in defamation.

Considering the above analysis, the Court finds that the allegedly fake reviews about Nextiva cannot be actionable as defamation or trade libel. As such, the Court GRANTS Nextiva's motion for summary judgment regarding RingCentral's defamation and trade libel claims as to the allegedly fake *positive* reviews of Nextiva. The evidence of allegedly fake *negative* reviews of RingCentral, however, does establish that they are "of and concerning the plaintiff." Therefore, the Court DENIES summary judgment on the defamation and trade libel claims as to fake negative reviews of RingCentral.

### 2. Trade Libel

Nextiva moves for summary judgment on RingCentral's trade libel claim for failure to prove causation and special damages. Nextiva MSJ at 7.

Trade libel is the intentional disparagement of another's property that results in pecuniary damage. *Aetna*, 838 F.2d at 351. In the Ninth Circuit, plaintiffs must identify specific statements constituting trade libel. *See First Advantage Background Servs. v. Private Eyes, Inc.,* 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008). And a plaintiff "must also prove that the statement played 'a material and substantial part in inducing others not to deal with [the plaintiff].'" *Piping Rock Partners v. David Lerner*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015) (quoting *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964)). Finally, a trade libel plaintiff also must prove special damages, *Peak Health Ctr. v. Dorfman*, No. 19-cv-04145-VKD, 2019 WL 5893188, at *5 (N.D. Cal. Nov. 12, 2019), in the form of specifically itemized pecuniary harm that was proximately caused by the libelous statements. *See Piping Rock Partners*, 946 F. Supp. 2d at 981.

First, the parties disagree on the relevant law for causation and special damages for trade libel. Under Nextiva's view, a plaintiff is required to "identify particular customers and transactions of which it was deprived as a result of the libel." Nextiva Reply at 8; *Piping Rock,* 946 F. Supp. 2d at 981 (quoting *Mann v. Quality Old Time Serv., Inc.*, 120

13

Cal. App. 4th 90, 109 (2004) (*overruled on other grounds by Baral v. Schnitt*, 1 Cal. 5th 376 (2016)). Under RingCentral's view, a "general losses standard" is sufficient to demonstrate damages, requiring that plaintiffs only show lost sales following publication or mass dissemination of the statements and eliminate all other "reasonably likely causes." RC Opp'n at 16; *see* Restatement (Second) of Torts §§ 626, 633 (1977). The Court finds that the specific customer and transaction identification standard is the applicable law.

Next, applying the above standard for causation and pecuniary loss, the Court finds that there is a genuine dispute of material fact. "Causation is generally a question of fact for the jury, unless reasonable minds could not dispute the absence of causation." *Lombardo v. Huysentruyt*, 91 Cal. App. 4th 656, 666 (2001). Here, RingCentral specifically identified customers and transactions. *See* Dkt. No. 227-10 ("Chou Decl."), Ex. A; Dkt. No. 201-8; Mohammad Decl., Exs. B, E, F. RingCentral shows that those prospective customers saw reviews of both companies as part of their decision-making process, and that RingCentral lost those particular transactions. *Id.* But it is unclear, however, whether they saw the allegedly *fake* reviews, and if so, whether those fake reviews played a substantial and material role in their decision to choose Nextiva over RingCentral. *See* Chou Decl., Ex. A. As discussed above, several of those reviews indicate numerous reasons for selecting Nextiva. Thus, the evidence raises a triable issue of fact on causation and special damages for trade libel. Therefore, summary judgment is DENIED as to RingCentral's trade libel claim.

### 3. Intentional Interference with Prospective Economic Advantage

Nextiva moves for summary judgment on RingCentral's intentional interference with prospective economic advantage claim for (1) failure to prove causation and special damages, and (2) failure to prove that Nextiva knew about RingCentral's prospective business relationships. Nextiva MSJ at 10–12. This claim requires a plaintiff to prove "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4)

14

actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

### a. Causation and Special Damages

As with a trade libel claim, RingCentral's prospective customers must have actually read the allegedly fake reviews and taken action because of them for the reviews to proximately cause disruption to RingCentral's prospective economic relationships. *See id.* RingCentral must also establish special damages. *See Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998). For the same reasons as the trade libel claim analysis above, the Court finds a genuine dispute of material fact regarding causation and special damages for RingCentral's intentional interference claim.

### b. Nextiva's Knowledge of an Economic Relationship

Nextiva also argues that it is entitled to summary judgment because RingCentral cannot establish that Nextiva knew of the economic relationships with which it allegedly interfered. Nextiva MSJ at 12.

RingCentral must prove that, at the time Nextiva allegedly posted fake reviews, it knew it was interfering with a contractual relationship. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005). In the face of evidence provided by RingCentral showing Nextiva's involvements with RingCentral's prospective customers,[2] Nextiva has not shown an absence of a genuine dispute here. *See* Mullins Decl., Exs. 47–50, 54; Dkt. No. 202-2 "(Gold Decl."), Ex. 17 at 6–7; *see also Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (Ct. App. 1986) (holding that it is "not persuaded knowledge of the injured party's specific identity or name is a prerequisite to recovery for [intentional interference with prospective economic

---

[2] RingCentral's only evidence provided on this argument, and portions of Nextiva's evidence, is held under seal. As such, the Court does not discuss its contents. *See* Dkt. No. 319.

advantage.]"); *Altera Corp.*, 424 F.3d at 1092 (stating that "the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship."); *Transcription Commc'ns Corp. v. John Muir Health*, No. 08-cv-4418, 2009 WL 666943-TEH, at *10 (N.D. Cal. Mar. 13, 2009) (same). Therefore, the Court DENIES Nextiva's motion regarding the intentional interference claim on these grounds.

### 4. Unfair Competition Law

Nextiva moves for summary judgment on RingCentral's unfair competition law (UCL) claim on the grounds that it has failed to show it is entitled to an injunction. Specifically, Nextiva argues that RingCentral lacks evidence that the conduct is likely to recur. Nextiva MSJ at 15. The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

"[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation omitted). Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," "past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 948. Rather, to have standing to seek an injunction, a plaintiff "must show a sufficient likelihood—not a speculative possibility—that he will personally be harmed again in the same way." *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1139 (N.D. Cal. 2017).

RingCentral provided sufficient evidence showing that it has standing to pursue an injunction under the UCL. That Nextiva has since fired the alleged wrongdoers and discontinued its policy does not mean that a risk of future injury is lacking. *See* Dkt. No. 180-3, Ex. 5; Nextiva Reply at 12. Much of the evidence in RingCentral's opposition brief shows disputes of fact about whether the officers and employees (who are still employed by Nextiva) were complicit or failed to act regarding the fake review scheme. *See* RC

16

Opp'n at 19–20; Mullins Decl., Exs. 15–16, 25, 29–34, 36–37, 55.[3]  Furthermore, there are disputes of fact regarding whether the unfair and unlawful acts have been discontinued through remedies implemented by specific teams at Nextiva versus company-wide implementation.  *See* RC Opp'n at 20; Mullins Decl., Ex. 25, 56.  Thus, the future likelihood of occurrence is a triable issue and summary judgment on the unfair competition law claim is DENIED.

### 5. Cybersquatting

Finally, Nextiva moves for summary judgment on RingCentral's cybersquatting claim on the grounds that RingCentral lacks standing, and that Nextiva cannot be held liable for the acts of Labunski, its independent contractor.  Nextiva MSJ at 16–21.  RingCentral claims that Nextiva, through the acts of Labunski, committed "cybersquatting" in violation of the Lanham Act, 15 U.S.C. § 1125(d), by "falsely register[ing] at least one domain name strongly suggestive of the RingCentral brand name."  TAC ¶ 85.

Yaniv Masjedi was Nextiva's Chief Marketing Officer who hired Labunski to work on search engine optimization.  *See* Mullins. Decl., Ex. 1 at 324–325.  In mid-2017, Masjedi instructed Labunski to impersonate another competitor to post fake negative reviews.  *See* Mullins Decl., Ex. 3.  In late 2018, Labunski re-used that idea to impersonate RingCentral; Labunski purchased the domain name "ringcetrnal.com" and used fake identities and funds supplied by Nextiva, *see* Mullins Decl., Exs. 41–42, Hill Decl., Ex. 2, he created fake email accounts on the "ringcetrnal.com" domain to impersonate RingCentral's CEO and the CEO's daughter, and tried to use those false identities to eliminate positive reviews of RingCentral with the Better Business Bureau and Fit Small Business, *see* Hill Decl., Exs. 3–4.  The parties do not dispute that Labunski registered the "ringcetrnal.com" domain name with the domain registrar Namecheap, or that he created the email addresses associated with the domain; they only dispute whether Labunski's

---

[3] The cited evidence is held under seal, so the Court refrains from discussing its contents. *See* Dkt. No. 319.

actions may be imputed to Nextiva. *See* Nextiva MSJ at 18; Answer ¶ 29; Gold Decl., Ex. 23.

### a. Standing

To have Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Plaintiff's injury must be "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). "Although general allegations of injury can suffice at the pleading stage, the plaintiff must set forth 'specific facts' to survive a motion for summary judgment based on lack of standing." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (quoting *Lujan*, 504 U.S. at 561).

RingCentral argues that Labunski's conduct magnified the effects of the fake negative reviews of RingCentral. *See* RC Opp'n at 9, 21–22. And as a result, it suffered reputational harm with the review websites who received emails from the "ringcetrnal.com" domain, because they host reviews that have a material impact on RingCentral's business. *Id.* But Nextiva claims that there is no evidence that Labunski's impersonation of RingCentral officials actually harmed RingCentral. *See* Nextiva MSJ at 17–18.

Nextiva cites to RingCentral's 30(b)(6) witness, Tiffany Wan's, testimony to support its position. Though Wan testified that "the reputation of RingCentral was diminished . . . through the fraudulent emails," she also lacked knowledge of any changes to RingCentral's Better Business Bureau membership or of any RingCentral reviews being removed from Fit Small Business. Gold Decl., Ex. 22 at 47:3–17, 55:11–56:5, 60:5–24. But Wan's lack of knowledge does not prove that RingCentral was not harmed by the cybersquatting, and it is for the jury to weigh the credibility of RingCentral's witness testimony. Therefore, the Court finds that RingCentral's evidence raises a triable issue of

fact about whether it suffered reputational harm. Nextiva's request for summary judgment on the standing issue is DENIED.

### b. Labunski as an Independent Contractor

Nextiva contends that as an independent contractor, Labunski's actions cannot be imputed to Nextiva because (1) Labunski was not Nextiva's agent at all, and (2) even if he was, Nextiva never authorized Labunski to register the "ringcetrnal.com" domain. Nextiva MSJ at 19. It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998).

"An agency relationship arises "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (2006). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id*. at § 2.01. A principal is liable to a third party harmed by an agent's tortious conduct within the scope of actual authority. *See id*. at §7.04. Upon review of the evidence, the Court concludes that RingCentral has provided sufficient evidence for a jury to find that Labunski was an agent of Nextiva for purposes of cybersquatting liability. *See* Mullins Decl., Exs. 3, 41–42.

Even if Labunski was an agent, it does not necessarily mean that Nextiva is liable for conduct that was not authorized, or was outside the scope, of Labunski's authority to act on Nextiva's behalf. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (quoting Restatement (Third) of Agency § 7.04). Thus, the relevant question is whether a jury could reasonably find that Labunkski's wrongful conduct was within his authority, or whether Labunski was negligently supervised by Nextiva.

Here, RingCentral provided sufficient evidence showing that Labunski possessed a

reasonable understanding of the authority conferred upon him by Nextiva. Masjedi's instructions to Labunski conferred actual authority to purchase the domain names, and the evidence suggests that Labunski's authority to impersonate RingCentral officers was implied. *See* Mullins Decl., Exs. 3, 41–42. Nextiva argues that Labunski's consulting agreement disclaimed an agency relationship. Nextiva MSJ at 19. But disavowing agency by agreement is not sufficient under the law. *See* Restatement at § 1.02. Whether or not a principal holds out the purported agent as an agent by calling them such, does not determine the scope of the relationship. *See id.* § 1.02; *see also Operation Tech., Inc. v. Cyme Int'l T&D, Inc.*, No. 14-cv-0999-JVS (DFMx), 2016 WL 6246806 at *4, (C.D. Cal. Mar. 31, 2016). Therefore, Labunski's implied actual authority, and Nextiva's arguably negligent supervision of Labunski, are triable issues.

For the foregoing reasons, the Court concludes that RingCentral has raised a triable issue of fact that Labunski was acting as Nextiva's agent with implied actual authority, or alternatively, that Nextiva negligently supervised Labunski as its agent. Accordingly, the Court DENIES Nextiva's motion for vicarious liability on the cybersquatting claim.

## IV. CONCLUSION

Because there are genuine issues of material fact as to RingCentral's /review page, Nextiva's damages, and unclean hands, RingCentral's motion for summary judgment is DENIED in its entirety.

As explained above, Nextiva's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Nextiva's motion is DENIED on all grounds, except Nextiva's motion is GRANTED as to all allegedly fake positive reviews of Nextiva pertaining to RingCentral's defamation and trade libel claims only.

**IT IS SO ORDERED.**

Dated: June 17, 2021

_____
NATHANAEL M. COUSINS
United States Magistrate Judge